**Martin MYERS and Sand & Seas, Inc., Plaintiffs,**

**v.**

**CIGNA PROPERTY AND CASUALTY INSURANCE COMPANY, Defendant.**

**96 Civ. 0902 (RPP).**

United States District Court, S.D. New York.

Feb. 7, 1997.

The Law Office of Edward J. McCarren, New York City, by Jeanne–Marie Downey, for Plaintiffs.

Bigham Englar Jones & Houston, New York City, by Stacey Tranchina, for Defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Cigna Property and Casualty Insurance Company ("Cigna") moves, pursuant to Federal Rule of Civil Procedure ("Fed. R.Civ.P.") 56(c) for summary judgment dismissing the claims of Plaintiffs Martin Myers and Sand & Seas, Inc. (collectively "Myers") to recover under a policy of marine insurance for damage sustained to Myers' 53–foot Hatteras yacht.

## *BACKGROUND*

The subject of this litigation is Myers' 1976, 53–foot Hatteras motor yacht named "DAD'S TOY". (Defendant's Statement of Undisputed Material Fact Pursuant to Local Civil Rule 3(g) ("Def. 3(g)") ¶ 1 and Ex. C.) Myers is suing Cigna under Yacht Policy No. YKR 271280 issued to "Sand & Seas Inc. & Martin F. Myers" ("the Policy") originally took effect on May 28, 1989 and was renewed for one-year periods until May 28, 1994.[1] (*Id.* ¶¶ 2–3.)

With respect to property damage, the Policy stated: "We will provide coverage for accidental direct physical loss or damage to your insured property as well as salvage charges, except as specifically excluded in this policy." (Affidavit of Edward J. Anderson, Sworn to On May 20, 1996 ("Anderson Aff."), Ex. A at 5.) The exclusions from coverage under the policy included: "manufacturer's defects, or defects in design" and "the cost of replacing or repairing any item having a latent defect that causes damage to your insured property;

---

1. Although Myers denies defendant's 3(g) statement that the Policy was not renewed after May 28, 1994, plaintiff does not offer an alternate date nor does it cite any depositions, affidavits, or other exhibits to support its position. Such a denial is insufficient to show the existence of a genuine issue of material fact. Fed.R.Civ.P. 56(e).

however, resulting damage would be covered." (*Id.*)

With respect to notice of loss the policy provides:

> You must report in writing to us or our authorized agent as soon as possible after the occurrence of any accident, loss, damage, or expense which may be covered under this policy. This notice should state when, where and how the event occurred and should include the name and addresses of any witnesses.... If you do not provide the notice to us required by this section as soon as possible, any claim for such loss under this policy will be voided.

(Anderson Aff., Ex. A at 4) ("Notice Provision").

The policy further provided:

> **Suit Against Us:** You may not bring a suit against us unless you have complied with all terms of this policy. In addition:
> a. with respect to any claim or loss to insured property, any suit against us must be commenced within one year of the date of loss or damage.

(Anderson Aff., Ex A at 5) (the "Time–Bar Provision".)

On August 17, 1991, the vessel was damaged in Hurricane Bob. (Affidavit of Martin F. Myers In Opposition To Defendants Summary Judgment Motion, Sworn to on June 13, 1996, ("Myers Aff.") ¶ 6.) After being notified of the loss on August 18, 1991, Cigna covered the cost of repairs to the vessel reported at that time. (Myers Aff. ¶¶ 7–8.)

On July 19, 1994, Myers observed fuel in the bilges of the vessel. (Myers Aff. ¶ 9.) Upon discovery of the fuel, Myers contacted the Mattituck Inlet Marina and Shipyard, Inc. ("Mattituck") and delivered the vessel there for tests to determine the source of the fuel. (Myers Aff. ¶ 10.) Mattituck employees were unable to determine the source of the leak. (Def. 3(g) ¶ 9.) Myers had the bilges pumped out and took the aft fuel tank offline. (Myers Aff. ¶ 14.) While operating the vessel in August of 1994, Myers again observed fuel in the bilges and delivered it again to Mattituck to investigate the source of the fuel oil. (Myers Aff. ¶ 17.) In early October 1994, Myers was informed that the source of the fuel in the bilges had not been located. (Myers Aff. ¶ 19.)

On October 7, 1994, Myers' broker faxed a "Property Loss Notice" to Cigna, which informed Cigna that "[i]nsured notice[d] fuel tank leaks while at sea" and that the approximate discovery date was August 8, 1994.[2] (Def. 3(g) ¶ 8; Anderson Aff., Ex. B.)

By letter dated November 7, 1994, Cigna informed Myers' broker that, "As of this date the cause of the leak has not been discovered by [the supervisor and service representative]. Therefore it is not known if the cause is a covered loss under the Policy." (Anderson Aff., Ex. D.) The November 7 letter further explained that "various expenses have been and are being incurred for the search and discovery of the cause of the leak. A covered cause of loss must be established for the consideration of these expenses and their payment." (*Id.*) The November 7 letter concluded that, "This Company reserves all its rights under the Policy concerning this matter."

A letter from Cigna to Myers, dated February 22, 1995, stated that the cause of the leak still had not been found and that "[i]f in the future the source of the fuel is found we will then be able to further investigate to determine if a damage that is covered by the policy has occurred. We cannot respond to the charges forwarded to us by Mattituck Inlet Marine [sic] Shipyard Inc. as these charges cannot be shown to be related to a cause of loss covered by the Policy." (Anderson Aff.Ex. D.)

Cigna wrote to Myers' broker on March 27, 1995:

> You have attributed the movement of the center of the fuel tank to the storm of 8/91. However, it would seem that the eroding of the foam would cause the tank to move. There was no leakage of fuel in 8/91 nor evidence of same in the 3 years following the storm. Also in 8/91 the hull did not

---

2. The notice of loss from Myers and the subsequent letters from Cigna refer to the policy number as YO 4840598. Neither party disputes, however, that the correct policy is YKR 271280, attached as Anderson Aff., Ex. A.

suffer any impact damage in the location of the center tank.

We therefore advise that the information and investigation to date does not indicate that the storm of 8/91 caused either the tank movement or the fuel leak.

(Anderson Aff.Ex. D.) Further correspondence from Cigna to Myers' broker, dated April 12, 1995, responded to information that Myers had contacted an independent surveyor to determine the source of the leak:

These continuing efforts to discover a cause for the fuel oil found in the bilge are at the direction and expense of the insured. We have contacted our surveyors ... to report on the progress of this continuing effort. We have done so without accepting their expense as a covered item under the policy.

(Anderson Aff.Ex. D.) In a letter dated July 3, 1995, Cigna wrote that

the failure of the fuel tanks is a direct result of construction materials and workmanship....

The policy under Part A: Property Damage, Page 5, paragraph 3A and 3D excludes property damage resulting from wear and tear, gradual deterioration, manufacturer's defect or defects in design. These causes of damage have been found to be the primary and proximate factors directly resulting in the chafing, fracturing, and leaking of the fuel tanks. The policy is therefore unable to respond to the damages resulting from these causes.

(Anderson Aff.Ex. D.) Each of these letters, from Nov. 7, 1994 through July 3, 1995, states that Cigna reserves its rights under the Policy and under the law.

Myers filed this action on February 7, 1996 alleging that the vessel had, in August 1991, suffered a casualty which caused damage to its fuel tanks. (Complaint ¶ 10.) Alternatively, Myers alleged that a latent defect in the vessel, covered by the policy issued by Defendant, caused a leakage of fuel which damaged the vessel. (Complaint ¶ 17.)

## DISCUSSION

Cigna contends that Myers' claims are barred as a matter of law because: 1) Myers failed to initiate suit within one year of the loss or damage to insured property as required by the Policy; and 2) Myers' notice of loss was untimely under the Policy.

The Second Circuit has summarized the standards for granting summary judgment as follows:

First, summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Second, the burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists. In considering that, third, all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought. Fourth, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper.

*Gallo v. Prudential Residential Svcs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

I. *Failure to Bring Suit Within One Year of Damage to Property*

Cigna has disclaimed liability under the policy on the ground that Myers failed to comply with the provision of the policy that required that any lawsuit seeking recovery for damage covered under the policy be brought within one year of the loss. Cigna claims that the clause "with respect to any claim or loss to insured property, any suit against us must be commenced within one year of the date of the loss or damage" makes it clear that the time limitation begins to run when the loss actually occurs, in this case, August 1991, rather than when it is observed by the insured. Cigna argues, furthermore, that even assuming that "date of loss or damage" within the meaning of the

policy refers to date of *discovery* of damage, the discovery of damage occurred no later than August 8, 1994, as indicated on the notice of claim report, and that Myers therefore was obligated to initiate suit against Cigna within one year after August 8, 1994.

Myers contends that the one-year limitation period did not commence until all conditions precedent to recovery under the insurance contract had been satisfied and Myers' cause of action against Cigna had accrued. Given prior communications with Cigna in which Cigna informed Myers that it would not be able to determine whether damage to the vessel was covered under the policy until after the source of the fuel was determined, however, Myers contends that suit would have been premature under the Policy, which required cooperation with the insurer, until thirty days after May 28, 1995, the date on which the source of the fuel in the bilges was discovered.

The Policy requires: "[a]ny person making a claim must ... cooperate with us in the investigation, settlement, or defense of any claim or suit under this policy." (Anderson Aff., Ex.A. at 5.) A further provision of the Policy states that "[y]ou may not bring a suit against us unless you have complied with all terms of this policy." (*Id.* at 5.) Finally, the policy provides for payment of the loss "within thirty (30) days after the detailed sworn proof of loss"[3] is submitted. (*Id.* at 4.) Myers contends that it was unable to commence suit against Cigna sooner than it did because the Policy required him to cooperate with Cigna in the investigation of the damage to the vessel.

■ Marine insurance contracts are governed by federal admiralty law when there is an established federal rule and by state law when there is not. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293 (2d Cir.1987). The parties do not dispute that as no federal statute or Supreme Court rule exists relating to interpretation of the time bar or notice of loss provisions, New York state law applies. *See Big Lift Shipping Co. v. Bellefonte Ins. Co.*, 594 F.Supp. 701, 704 (S.D.N.Y.1984).

■ New York law supports Myers' contention that the Policy should be construed to mean that the one-year limitation to bring suit begins to run after the claim became due and payable as opposed to the date of loss or damage to the insured property.[4] In *Steen v. Niagara Fire Insurance Co.*, the New York Court of Appeals interpreted language in an insurance policy that required the insured to bring suit against the insurer within a "term of twelve months next after the loss or damage shall occur," to require suit to be brought within a year from the time the loss was due and payable by the insurer, rather than a year after the actual physical damage to the insured property occurred. 89 N.Y. 315, 321–22 (1882). In *Proc v. Home Ins. Co.*, 17 N.Y.2d 239, 242–43 (1966), the New York Court of Appeals distinguished between time-limitation provisions that begin "after inception of the loss" and less explicit provisions, which have been interpreted to begin "from the time the cause of action accrued." *See Margulies v. Quaker City Fire & Marine Ins. Co.*, 276 A.D. 695, 97 N.Y.S.2d 100 (1950) (finding period of limitation beginning at "inception of the loss" to start at occurrence of casualty); *Parker v. American Sur.*

---

3. The Policy provides that a "proof of loss" is "signed and sworn to by you setting forth to the best of your knowledge, the facts of the loss." (*Id.* at 4.) Cigna asserts that Myers still has not submitted a sworn proof of loss or interest in the insured yacht in connection with the claim, as required by Section III, Clause 4 of the Policy. (*See* Anderson Reply Aff. ¶ 7.) Cigna also asserts, however, that such proof was never asked for, as also specified by the same section. (*Id.* ¶ 8.)

4. Cigna's argument, that the introductory phrase of the Time–Bar Provision, "with respect to any claim or loss to insured property," indicates that the subsequent phrase, "date of loss or damage,"

refers to the loss or damage to the *insured property* as opposed to the *insured*, is unpersuasive. Construed with the next provision, "with respect to any other claim for loss, no suit may be brought against us until the amount of the covered person's obligation to pay has been determined by final judgments after trial or by written agreement signed by you, us, and the claimant," (Anderson Aff.Ex. A at 5), the introductory phrase of the Time–Bar Provision clearly is meant to distinguish between claims brought by the insured under the Policy and claims brought against the insured covered by the Policy.

*Co. of New York*, 176 Misc. 985, 29 N.Y.S.2d 414 (Sup.Ct., Monroe County 1941) (finding period of limitation beginning "the date upon which the loss or damage occurred" to start at accrual of liability).[5] The Time–Bar Provision is similar to that in Steen and does not refer to the "inception" of the loss or damage or to the "event from which the loss or damage arises". Myers, therefore, must have brought suit within one year of the date Cigna's liability accrued.

■ For the purpose of this motion it is unnecessary to determine when, if ever, the claim became payable; it is only necessary to determine if the claim had become payable by February 7, 1995. Resolving all inferences in favor of Myers, it is possible that liability under the policy did not accrue, if ever, until some time after February 7, 1995. The source of the leak, according to Cigna's letter of February 22, 1995, (Anderson Aff. Ex. D), was still unknown as of February 7, 1995. Because the Policy requires a "detailed sworn proof of loss" prior to payment, Myers had insufficient information at that time to provide such a proof of loss and thereafter bring suit. A reasonable factfinder could find that liability to Cigna did not accrue until some time thereafter. Cigna has therefore failed to show that no genuine issue of fact exists with respect to Myers' timeliness of bringing suit.

II. *Failure to Comply With Notice of Loss Provision of Policy*

■ Cigna also has disclaimed liability under the policy on the ground that it was not afforded timely notice of loss as required by the Policy. The Notice Provision requires written notice "as soon as possible after the occurrence of any accident, loss, damage, or expense which may be covered under this policy." Myers first noticed fuel in the bilges of the vessel in July 1994 and notified Cigna about a claim on the policy on October 7

1994, with a written notice that reported the discovery date as August 8, 1994. Cigna argues that even accepting a discovery date of August 8, 1994, Myers failed to notify it "as soon as possible."

Prompt notice provisions "require[ ] that notice be given within a reasonable time under all the circumstances." *Security Mutual Ins. Co. of New York v. Acker–Fitzsimons Corp.*, 31 N.Y.2d 436, 441, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972). New York courts have adhered strictly to prompt notification provisions, even for losses "which appear insubstantial or which in the insured's estimation may not ultimately ripen into a claim." *Power Authority v. Westinghouse Electric Corp.*, 117 A.D.2d 336, 502 N.Y.S.2d 420, 422 (App. Div., 1st Dep't 1986) (finding unjustified delay of fifty-three days to violate prompt notification provision); *Pandora Indus., Inc. v. St. Paul Surplus Lines Ins. Co.*, 188 A.D.2d 277, 590 N.Y.S.2d 471, 471 (1992) (finding thirty-one days in violation of prompt notification provision despite good faith belief loss was not covered); *Republic New York Corp. v. American Home*, 125 A.D.2d 247, 509 N.Y.S.2d 339 (1st Dep't.1986) (forty-five days).

Myers alleges that after he observed fuel oil in the bilges on July 19, 1994, he immediately sent the yacht to be tested but was unable to determine the source of the leak; that after he observed more oil in the bilges on the last weekend of August, he again sent the yacht to be tested and was informed in early October 1994 that the source of the leak again could not be found. (Myers Aff. ¶¶ 9–19.) Myers' affidavit, however, is contradicted by his "Notice of Loss" form, in which he reported the discovery date as August 8, 1994. Thus, resolving all ambiguities in favor of Myers, Myers discovered the leak on August 8, 1994 and waited until October 7, 1994, a period of sixty days, before notification.

5. In *Helios Trading Corp. v. Great Amer. Ins. Co.*, on which Cigna relies, the time-limitation period began one year "after the date of the accident, disaster or event causing loss of, or damage, to the insured goods." No. 92 Civ. 1071, 1993 WL 502434 (S.D.N.Y. March 8, 1993). Cigna also relies on *Haber Export Agencies, Inc. v. Universal Ins. Co.*, 1959 A.M.C. 190 (S.D.N.Y.1959), in which the limitation period began "after the happening of the loss," and *Issa v. Reliance Ins. Co. of New York*, 685 F.Supp. 47, 48 (S.D.N.Y.1987), in which the time limitation period began "the date of the happening of the accident out of which the claim arises." All three cases involve time-bar provisions more explicit than the one provided in the Policy.

Given Myers' discovery of the fuel leak on August 8, 1994, and Myers' knowledge of the damage that had occurred to the yacht in 1991 for which he had accidental loss insurance, Myers had knowledge of an "accident, loss, damage, or expense which may be covered under th[e] policy," as of August 8, 1994. Under the circumstances of this knowledge, notice to Cigna on October 7, 1994 was unreasonable delay. Myers therefore failed to comply with the terms of its policy and may not bring suit.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is hereby granted.

**IT IS SO ORDERED.**