**PROFESSIONAL PRODUCT RESEARCH INC., a New York corporation, Plaintiff,**

v.

**GENERAL STAR INDEMNITY CO., a Connecticut corporation, Defendant.**

No. 06 Civ. 5685 (CM)(GWG).

United States District Court, S.D. New York.

June 30, 2008.

David Allan Gauntlett, Eric R. Little, Gauntlett & Associates, Irvine, CA, Malcolm S. Taub, Malcolm S. Taub, LLP, New York, NY, for Plaintiff.

Michael Scott Gollub, Marshall Conway & Wright, P.C., New York, NY, for Defendant.

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, GRANTING DEFENDANT'S CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT, AND DECLARING THAT DEFENDANT HAS NO DUTY TO DEFEND/INDEMNIFY

McMAHON, District Judge:

This action seeking a declaratory judgment that an insurer has a duty to defend

plaintiff in an underlying action has its genesis in an action pending in the United States District Court for the Eastern District of Tennessee. The action involves intellectual property torts. It was commenced in 1999, by a company known as E–Z Bowz (EZB), against plaintiff Professional Product Research Co., Inc. (PPRI). The parties have cross-moved for summary judgment on the issue of coverage.

Because plaintiff failed to give its insurer timely notice of the claim for "advertising injury" that was asserted by EZB, defendant's motion for summary judgment is granted and the court declares that it has no duty to defend PPRI or to indemnify its insured for any judgment that may be entered against it.

### Statement of Facts

Although the parties vigorously dispute the legal implications of the facts, the facts themselves are undisputed.

### 1. The Policy

General Star provided PPRI with Commercial General Liability insurance, effective February 9, 1995 through February 9, 1997, under two policies: Policy No. IYG–319918A and Policy No. IYG–319918B. The policy limits are $1 million per year.

The policies provided, in pertinent part:

COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of ... "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.....

* * *

b. This insurance applies to:

* * *

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

SECTION V—DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

* * *

c. Misappropriation of advertising ideas or style of doing business.

* * *

The policy contains two relevant notice provisions:

SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS

* * *

2. Duties in The Event of Occurrence, Claim or Suit.

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practical.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

\* \* \*

The parties agree that New York law applies to the construction of this policy.

■ Under New York law, "advertising injury" is defined as follows:

First, the injury must have been caused by an offense committed in the course of the insured's advertising its goods, products or services. Second, the offense must be one enumerated in the policy.... Third, the advertising injury must not be precluded by policies' express exclusions.

*Massachusetts Bay Ins. Co. v. Penny Preville, Inc.,* 1996 WL 389266, at \*7 (S.D.N.Y. July 10, 1996) (citations omitted). Claims for "trade dress infringement" are encompassed within the meaning of "misappropriation of advertising ideas or style of doing business," and so it has been held that, "The injury caused by [insured's] infringement of [the intellectual property owner's] trade dress is an advertising injury . . . ." *Ben Berger & Son, Inc. v. American Motorist Ins. Co.,* 1995 WL 386560, at \*3 (S.D.N.Y. June 29, 1995).

### 2. The EZB Lawsuit

In a complaint filed in the United States District Court for the Eastern District of Tennessee on March 8, 1999, EZB alleged, *inter alia,* that PPRI was guilty of trade dress infringements of a bow making apparatus, unfair competition, utility patent infringement and design patent infringement. *See E–Z Bowz, LLC v. P.P.R. Co., Inc.,* 99 Civ. 127 (E.D.Term. Mar. 8, 1999). EZB alleged that PPRI infringed plaintiff's trade dress. With regard to the trade dress infringement claim, the complaint alleges as follows:

Count 1: Trade Dress Infringement and Unfair Competition

\* \* \*

6. Plaintiff is the owner of certain trade dress, including printed matter, associated with plaintiff's bow making apparatus.

7. Plaintiff has used and still is using the trade dress to distinguish its bow making apparatus from goods made and sold by others, by prominently displaying the trade dress on and with the bow making apparatus.

8. Defendant has infringed and still is infringing plaintiff's trade dress in the bow making apparatus by making, selling, and using bow making apparatus's [sic] embodying plaintiff's trade dress.

9. Defendant's actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of defendant with plaintiff, or as to the origin, sponsorship, or approval or defendant's goods, services, or commercial activities by plaintiff.

10. Defendant's infringing bow making apparatus is inferior to plaintiff's bow making apparatus in that it is not made according to the same standards of quality. Therefore, by confusing the public as to the source of origin of defendant's goods, defendant dilutes and destroys plaintiff's reputation and goodwill.

11. Plaintiff has given written notice to defendant of its infringement, yet defendant has not stopped its infringing activities and continues its willful infringement.

The complaint was amended once, on September 20, 1999. The allegations relating to trade dress in the First Count were not altered in any way.

Although the complaint refers to EZB's ownership of "trade dress" in "printed matter," there is no specific reference to "hand-drawn illustrations of gift bows" as

an aspect of its trade dress. There is also no specific statement in the complaint that PPRI infringed the trade dress "in the course of advertising [PPRI's] goods."

The reference in Paragraph 11 of both complaints is to two "cease and desist" letters that were sent by EZB to PPRI on August 9, 1996 (within the policy's coverage period) and August 7, 1998. The first such letter alleged that PPRI's product was "marketed, designed and labeled such that it is a trade dress infringement." (Dkt. # 42, Bradley Cross–Moving Deck, Ex. A.[1]) The second letter stated: "If you compare [PPRI's product] to [EZB's] product, there is obviously trade dress violation. My client has been and continues to be damaged by the infringement and false advertising . . . ." (Dkt. # 21, Moving Declaration of Christopher M. Collins, Esq. (hereinafter "Collins Decl."), Ex. F.)

The record does not include any response to the first "cease and desist" letter. On September 29, 1998, PPRI's counsel responded to the second "cease and desist" letter in the following terms:

> We also note your allegation of "trade dress" violation, but you have provided no specifics as to what "trade dress" has been violated. If what you sought to protect was the way the article looked, i.e. the way the article was depicted in the drawings of your design patent, then the *quid pro quo* for that patent was a *limited* monopoly. Trade dress cannot be used to circumvent the limited monopoly of the patent laws and is thus, preempted. Thus, we believe your allegations of trade dress [infringement] are not clearly thought through.

(Collins Decl. Ex. G.)

It is undisputed that no notice of an "occurrence" was sent to General Star fol-lowing the receipt of either of the two "cease and desist letters," although the first letter alleged that PPRI's product was "marketed" in a manner that infringed on EZB's trade dress, and the second letter reiterates the trade dress claim and alleges "false advertising." Nor was notice of "suit" sent following the commencement of the underlying action in March 1999, although a claim for trade dress infringement was clearly alleged (if without much specificity).

In March 2001, PPRI moved to dismiss EZB's trade dress claim because EZB failed to allege that its product possesses secondary meaning, which, it argued, is a necessary element of a claim for trade dress infringement. In the alternative, PPRI moved to dismiss the trade dress claim because EZB had not identified any trade dress "that is not functional based on the utility and design patents." (Collins Decl. Ex. J.)

EZB did not, in its opposition to that motion, contend that the hand-drawn bows in EZB's product inserts constituted advertising, or that they were the basis for the trade dress infringement claim. However, it did assert that the complaint could not be dismissed because it had alleged that "printed matter" associated with its bow making apparatus was part of its trade dress. EZB stated that, if PPRI wanted more specific information about what printed matter constituted trade dress, it could do so by way of a motion for a more definite statement. (Collins Decl. Ex. K at 3–5.)

On April 13, 2001, EZB's counsel, complying with a court order, sent a letter

---

**1.** All but one of the citations in this recital are taken from exhibits attached to the Moving Declaration of Christopher M. Collins, Esq. (Dkt. # 21.) The 1996 "cease and desist" letter is attached to the Cross–Moving Declaration of Christopher T. Bradley, Esq. (Dkt. # 42.)

identifying "the unique and distinctive trade dress that is associated with Plaintiff's bow making apparatus." (Collins Decl. Ex. L.) The letter did not identify any aspect of plaintiff s "printed matter" as constituting protected trade dress other than certain labels that were affixed to the bow making device. It did not include any claim that any aspect of the printed instructions, including the hand drawings of the various styles of bows, constituted part of plaintiff's "unique and distinctive trade dress."

Shortly thereafter, EZB responded to PPRI's interrogatories. In its answer to Interrogatory No. 6, "Describe each and every material element of the trade dress that you claim in your bow maker," EZB adopted counsel's April 13, 2001 letter and offered no other description of the trade dress claim. (Collins Decl. Ex. M at 5.)

This response was apparently insufficient for PPRI, because counsel met and conferred, and in a consent order dated June 22, 2001, EZB agreed to provide a more definite statement about its trade dress claim. (Collins Decl. Ex. N.) Accordingly, EZB supplemented its interrogatory responses on January 25, 2002, and stated, in pertinent part:

> 4. The instructions which accompany the bow-maker, containing drawings or pictures and text, which depict the various types of bows that can be made, and include the names or styles of and drawings of various bows, and instructions of how to make them using the bow maker.... Defendant has copied and mimicked the appearance, drawings and text of said instructions and has thereby infringed E–Z Bowz's rights in its distinctive trade dress.

(Collins Decl. Ex. O.)

PPRI protested that this assertion of a new element of trade dress, coming after discovery, ought not be allowed. It took its complaint to the judge. The court announced that it viewed EZB's new assertion as "akin to a motion to amend the complaint," and complained that "it's happening very late, and if it were not for the fact that there's now a third party complaint out there that's obviously going to delay the trial of this anyway, I probably wouldn't have allowed it." (4/25/02 Hearing Tr., Collins Decl. Ex. P, at 43.) Nonetheless, the court said, "I am going to allow that-the inclusion of that additional element in the interrogatory response and not preclude them from offering that in any trade dress action." (Id. at 44.) The court did not direct that the complaint be amended to add this "additional element;" it simply accepted the supplementation of the previous interrogatory response and deemed the scope of the previously asserted claim expanded.

But the court was obviously annoyed that this supplementation was being made belatedly, and so announced: "However, there is going to be a price to be paid for this, and that is that to the extent that [anyone] needs to be re-deposed, if they still—if E–Z Bowz still wants to include this, they're going to have to pay for that, and that means travel costs and counsel time at the rate billed to the client." (Id.)

On July 5, 2002—two and one half months after the court's order allowing the "additional element" of trade dress and over five months after the "additional element was first asserted—EZB's attorney sent a letter to counsel for PPRI, in which he said:

> [W]ith regard to your request to take depositions at my client's expense, we have evaluated that situation and decline to agree to such matter. Instead, after considering the Court's comments and rulings on the issue of adding the written instructions as a specific element of trade dress, with the consequence of

allowing certain re-depositions pertaining to that matter at our expense, we have decided to drop the instructions as an element of trade dress, while reserving any rights we have to use any factual information in the case as provided by the rules of evidence.

(Collins Decl. Ex. Q.)

But only two weeks later, on July 23, 2002, EZB reversed field:

[W]ith regard to our ongoing debate about the trade dress issue, we are, on second thought, going to leave the bow maker instructions in as part of that trade dress element of the case.... [Y]ou can take the deposition of [the relevant witness] at that time if you wish.....

(Collins Decl. Ex. S.)

PPRI takes the position that this July 23, 2002 letter constituted an "amendment" of the complaint, and that this "amendment," as the first assertion of a trade dress claim that was arguably covered by the insurance policy, triggered its contractual duty to give notice.

On July 29, 2002—six days after the July 23 reversal of field—PPRI's broker advised General Star that the EZB Action alleged a potentially covered claim for violation of trade dress "committed in the course of advertising [PPRI's] goods." (See Moving Declaration of Margaret Hickey, Dkt. # 19 ¶ 9, Dkt. # 20 Ex. D.)

General Star refused to defend or indemnify, asserting that PPRI's notice was not timely, on August 12, 2002. (Id. Dkt. # 19 ¶ 12, Dkt. # 20 Ex. E at 5-6, 8.)

**Conclusions of Law**

Under Rule 56(c) of the Federal Rules of Civil Procedure, the Court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

See Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movant. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); Donahue v. Windsor Locks Bd. of Fire Comm'rs, 834 F.2d 54, 57 (2d Cir. 1987).

■ Under New York law, an insurer is not obligated to cover the loss of its insured unless the insured gives timely notice of loss in accordance with the insurance contract. Power Auth. v. Westinghouse Elec. Corp., 117 A.D.2d 336, 339, 502 N.Y.S.2d 420 (1st Dep't 1986). Notice requirements in insurance policies are strictly enforced. Compliance with such requirements is a condition precedent to coverage under the policy, and inexcusable non-compliance by the insured will bar coverage for the claim. Security Mut. Ins. Co. of New York v. Acker–Fitzsimons Corp., 31 N.Y.2d 436, 440, 340 N.Y.S.2d 902, 293 N.E.2d 76 (1972). "The requirement that an insured notify its liability carrier of a potential claim 'as soon as practicable' operates as a condition precedent to coverage." White v. City of New York, 81 N.Y.2d 955, 957, 598 N.Y.S.2d 759, 615 N.E.2d 216 (1993) (citation omitted). Indeed, the right of an insurer to receive notice is so fundamental that the insurer need not show prejudice to be able to disclaim liability on this basis. American Home Assurance Co. v. Republic Ins. Co., 788 F.Supp. 214, 216 (S.D.N.Y.1992), aff'd, 984 F.2d 76 (2d Cir.1993), cert. denied, 508 U.S. 973, 113 S.Ct. 2964, 125 L.Ed.2d 664 (1993).

■ The key here is that the insured is required to notify its carrier of a "potential" claim. An insured's obligation to pro-

vide notice of an occurrence or offense is triggered by the insured's knowledge of events and circumstances which would *suggest* the *possibility* of a claim, not the actuality of a claim. *See Crucible Materials Corp. v. Aetna & Surety Co.*, 228 F.Supp.2d 182, 193 (N.D.N.Y.2001) (emphasis added). Once knowledge suggests the possibility of a covered claim, New York law provides that notice be given promptly; even periods of delay as short as two months have been found to be unreasonable as a matter of law. *Myers v. Cigna Property and Casualty Ins. Co.*, 953 F.Supp. 551, 556–57 (S.D.N.Y.1997) (60 days not "as soon as practicable"); *Deso v. London & Lancashire Indem. Co. of America*, 3 N.Y.2d 127, 164 N.Y.S.2d 689, 143 N.E.2d 889 (1957) (51 days unreasonably late as a matter of law); *Heydt Contracting Corp. v. American Home Assurance Co.*, 146 A.D.2d 497, 499–500, 536 N.Y.S.2d 770 (1st Dep't 1989) (four month delay unreasonable as a matter of law); *Technaoro Inc. v. U.S. Fidelity & Guar. Co.*, 2006 WL 3230299, at *7 (S.D.N.Y. Nov. 7, 2006) (five month delay unreasonable in advertising injury case).

■ Under New York law, the question whether notice was given within a reasonable time may be determined as a matter of law when (1) the facts bearing on the delay in providing notice are not in dispute, and (2) the insured has not offered a legally valid excuse for the delay. *State of New York v. Blank*, 27 F.3d 783, 795 (2d Cir.1994); *see also Gresham v. American Gen. Life Ins. Co.*, 135 A.D.2d 1121, 1122, 523 N.Y.S.2d 282 (4th Dep't 1987) ("While ordinarily it is a question of fact whether an insured gave timely notice of loss, summary judgment is warranted where the insured has not offered a credible excuse for the delay in notification and where the underlying facts are not in dispute . . . .").

■ Here, as noted above, the underlying facts are not in dispute—only their implications are. Notice was given on July 29, 2002. PPRI alleges that that was a mere six days after the first assertion of a trade dress claim that involved potential advertising injury—an assertion that PPRI describes as an "amendment" of EZB's complaint. General Star contends that notice was due the first time E–Z Bowz used the words "trade dress" in a cease and desist letter—which occurred in 1996—and at the very latest when the Tennessee lawsuit, including a claim for trade dress infringement, was filed in March 1999.

While there is much that is appealing about General Star's position, I need not adopt it in order to find in defendant's favor. For even under the view of the matter most favorable to PPRI, its argument that no notice was required until July 23, 2002 is unpersuasive.

The premise that there was an "amendment" to the complaint on July 23, 2002 is absolutely and unequivocally false. Rather, on January 25, 2002—six months before the July 23 letter—EZB amended its previous interrogatory answer to include quite specifically trade dress claims relating to the "instructions," which included "drawings, pictures and text" about the various bows that could be made using the bow maker. While a strong argument could be made that PPRI's notice obligation was triggered by knowledge of a "potential" claim far earlier than January 25, 2002, the aspect of the trade dress claim that triggered notice was unmistakably asserted in the supplemental interrogatory response that was filed on January 25, 2002. Under a view of the evidence most favorable to PPRI, it knew of circumstances that suggested the possibility of a covered claim from and after that date. Nonetheless, PPRI failed to give notice to

its insurer until more than six months later. This is well outside the parameters of anything that New York law recognizes as "reasonable."

But there is more. On April 25, 2002, the presiding judge told the parties that he would not bar EZB from pursuing this aspect of its trade dress claim. April 25 was 94 days prior to the date when PPRI finally notified its insurer. As a matter of law, 94 days is an unreasonable amount of time to wait before giving notice to an insurer.

The fact that EZB went back and forth about whether it would actually pursue this aspect of its trade dress claim is irrelevant. EZB did not explicitly disavow its expanded claim until July 5, 2002—more than 150 days after it served its supplemental interrogatory answer, and more than 60 days after the judge permitted the expansion to go forward. Thus, at the time EZB sent the July 5 letter disavowing any intention to proceed on the "instructions" aspect of the trade dress claim, it was already too late, as a matter of law, to give timely notice to the insurer.

Additionally, as noted above, the duty to notify was not triggered when EZB made it clear that it would be pursuing this theory of trade dress. It was triggered when PPRI knew enough to be able to say that there was the possibility that such a claim would be asserted. PPRI knew enough to trigger its contractual duty to give notice no later than January 25, 2002, when EZB supplemented its interrogatory answer. Were any confirmation needed on this point, it is provided by PPRI's own Memorandum of Law in support of its motion, where it identifies the "interrogatory response constituting the [July 23, 2002] amendment" as "Ex. O." (Dkt. # 17, PPRI Mem. at 10.) But Exhibit O to the Collins Declaration is the supplemental interrogatory response that was filed back on January 25, 2002!

Therefore, PPRI's failure to give notice of the claim until the end of July was unreasonable as a matter of law. Unless PPRI has an objectively reasonable excuse for its late notice, the insurer has no duty to defend or indemnify.

PPRI has not offered a reasonable excuse for giving late notice.

PPRI argues that it entertained an objectively reasonable belief that the trade dress claim asserted by EZB did not qualify as "advertising injury" under the policy, because (1) it is difficult for anyone—courts, sophisticated attorneys, let alone clients—to figure out precisely what an "advertising injury" is; and (2) for a long period of time, the scope of the trade dress claim was limited to aspects of the bow maker that were functional and that could not have secondary meaning, which meant that the trade dress claim was not an "advertising" claim.

The fact that "advertising injury" is an amorphous concept does not reasonably excuse delaying notice for so much as a day, Indeed, if "advertising injury" is difficult to define, it argues for giving notice at the first moment when a claim that *might* qualify is asserted. The fact that a trade dress infringement claim *might* qualify as "advertising injury" (which is the fair import of New York law on the subject) suggests, not that notice could or should have been delayed, but that notice should have been given as soon as EZB raised the possibility of trade dress infringement—which, on this record, was back in 1996!

As for PPRI's second argument, it might (and I emphasize "might," since I do not need to resolve this issue) reasonably excuse PPRI's failure to give General Star notice of the trade dress claim prior to January 25, 2002. But once EZB supple-

mented its answer to Interrogatory No. 6 to include specifically the instructions, including the drawings of the bows, this excuse fell by the wayside. Once we pass January 25, further delay cannot reasonably be excused.

## Conclusion

For the foregoing reasons, plaintiff's motion for partial summary judgment is denied and defendant's motion for partial summary judgment is granted. The Court declares that General Star has no obligation to defend or indemnify PPRI for the trade dress infringement claim in suit in the EZB lawsuit, in view of PPRI's failure to comply with the policies' notice requirement.

The parties cross-moved only for partial summary judgment. The Court does not understand what is left of this lawsuit, and wishes to close the matter out. Defendant, as the prevailing party, has twenty days from the date of this order to apprise the Court of what matters remain open in this case. If, as I suspect, it is the issue of attorneys' fees incurred in the defense of this action, defendant has twenty days to make whatever application is authorized by the terms of the policy.

This constitutes the decision and order of the Court.