09-0727-cv
Fabozzi v. Lexington Ins. Co.

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2009

(Argued: November 9, 2009                           Decided: April 6, 2010)

Docket No. 09-0727-cv

_____

PAUL FABOZZI, ANNETTE FABOZZI,

*Plaintiffs-Appellants*,

— v.—

LEXINGTON INSURANCE COMPANY,

*Defendant-Appellee*,

JOHN DOES 1-10, ABC CORPS. 1-10,

*Defendants*.

Before: LEVAL, B.D. PARKER, AND LIVINGSTON, *Circuit Judges*.

_____

Plaintiffs-appellants appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, *J.*) dismissing claims against the defendant on the ground that plaintiffs had failed to file suit within the limitations period specified by their insurance policy. Vacated and remanded.

_____

Eric R. Breslin (Sheila Raftery Wiggins, *on the brief*), Duane Morris LLP, Newark, NJ, *for Plaintiffs-Appellants*.

Brian J. Bolan, Gennet, Kallmann, Antin & Robinson P.C., Parsippany, NJ, *for Defendant-Appellee*.

BARRINGTON D. PARKER, CIRCUIT JUDGE:

Plaintiffs-appellants Paul and Annette Fabozzi appeal from a judgment of the United States District Court for the Eastern District of New York (Townes, *J.*). The Fabozzis had a homeowners insurance policy with Lexington Insurance Company ("Lexington"), which covered their oceanside home on Staten Island, New York. When the house began to collapse as the result of structural damage, they filed a claim with Lexington. Twenty-six months later, Lexington denied coverage and the Fabozzis subsequently sued. Relying on a policy provision that required any suit to be commenced within two years "after the date of loss," Lexington contended that the Fabozzis had waited too long and the limitations period had expired. The district court agreed, granted Lexington's motion for summary judgment, and dismissed the suit. This appeal turns on whether, under New York law, the limitations period was triggered when the underlying damage to their home occurred, or when all the conditions precedent to bringing suit had been met. Because, under long-standing New York law, the limitations period did not begin to run until the Fabozzis' claim against Lexington accrued, rather the date of the accident, we conclude that the action must be remanded. Accordingly, the judgment of the district court is vacated.

I.      BACKGROUND

The facts are undisputed unless otherwise noted. The Fabozzis purchased their home in 1992, obtaining homeowners' insurance coverage from a number of companies over the succeeding years. Lexington first insured the property in 2001, aware of the property's beach-front location, and

2

sold the Fabozzis a specialized "Lex Elite" homeowner policy. When this policy was renewed in 2002, the annual cost of the premiums was $8,710.

The Fabozzis claim that they first became aware of structural deterioration during the course of a renovation that began in 2001. By April 2002 , their house had to be propped up to prevent it from fully collapsing. Approximately one month later, on May 13, 2002, the Fabozzis submitted their claim to Lexington. The company subsequently undertook an investigation to determine the cause of the damage, requesting documents, obtaining an engineer's evaluation, and ultimately taking Fabozzi's oral examination in January 2004. Altogether, Lexington's investigation of the claim lasted more than two years. Ultimately, on July 29, 2004, the insurance company denied coverage, stating that the damage was attributable to "wear and tear, deterioration, inherent vice, latent defect, wet and/or dry rot, as well as earth movement" – causes that it said were excluded from coverage. On October, 29, 2004, the Fabozzis sued Lexington, alleging breach of contract and breach of the implied covenant of good faith and fair dealing.

The Fabozzis' policy contained a contractual limitations clause, which read:

> Suit Against Us. No action can be brought unless the policy provisions have been complied with and the action is started within two years after the date of loss.

Interpreting this language, the district court held that, under New York law, "the date of loss" was the date the damage occurred, not the date the Fabozzis' claim was denied. As a result, the court concluded that the two-year contractual limitations period had expired, notwithstanding the fact that Lexington's investigation lasted more than two years while the plaintiffs' claim for coverage remained pending. The district court also rejected the Fabozzis' argument that conduct and statements by Lexington and its brokers tolled the limitations period. Although equitable estoppel

3

is generally treated as a question of fact, the court determined that no genuine dispute precluded summary judgment. On appeal, the Fabozzis argue that the district court incorrectly applied NewYork's law on contractual limitations periods and, alternatively, that unresolved factual issues precluded summary judgment on their equitable estoppel theory. We do not reach the latter argument, concluding instead that, under New York law, the Fabozzis' limitations period did not begin to run at the time of the accident.

## II. DISCUSSION

### A. Standard of Review

"We review a district court's grant of summary judgment *de novo*, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). We will affirm the judgment only if there is no genuine issue as to any material fact, and if the moving party is entitled to a judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). A court of appeals reviews *de novo* questions as to the plain meaning or ambiguity of the language of a contract, including an insurance policy. *See, e.g.*, *New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 121 (2d Cir. 2001). An ambiguity exists where the terms of an insurance contract could suggest "more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997) (citation and internal quotation marks omitted).

### B. Analysis

The Fabozzis' policy required that they bring suit "within two years after the date of loss." They argue that, under New York law, this language means the date on which the cause of action accrues – that is, the date on which all the conditions precedent to bringing a claim have been satisfied.[1] In their view, New York law distinguishes between the policy language here and language in other policies that, instead, require actions be commenced within a certain period after "the *inception* of the loss." Only this latter term of art, or language of equal precision, they argue, can tie a limitations period to the date of the accident or peril insured against. We conclude that the Fabozzis are correct.

1.      State law

In *Steen v. Niagara Fire Ins. Co.*, 89 N.Y. 315, 322-23 (1882), the New York Court of Appeals held that generic language setting a contractual limitations period should be interpreted to start the clock not at the time of the accident itself but only once "the right to bring an action exists" – that is, once all conditions precedent have been met. *See also Cooper v. United States Mut. Ben. Ass'n*, 30 N.E. 833, 834 (N.Y. 1892) ("[T]he period of limitation prescribed did not commence to run until the loss became due and payable, and the right to bring an action had accrued."). According to the court, only by exceptionally clear language could an insurer insist that "the time of the fire should be looked to as the event, from the happening of which the limitation should run." *Steen*, 89 N.Y. at 324.

The evolution of this requirement was analyzed by the New York Court of Appeals in *Proc v. Home Ins. Co.*, 217 N.E.2d 136 (N.Y. 1966). It observed that the state legislature responded to

---

[1] Before bringing a suit under the policy, the Fabozzis were required to comply with a number of other conditions, including provision of notice, requested records and documents, and an examination under oath.

the prevailing rule in 1887 and again in 1918, adopting a standard fire insurance policy which provided that an action had to be commenced "within twelve months next *after the fire*." *See Proc*, 217 N.E.2d at 138 (emphasis added). As insurance expanded to cover other types of accidents, the legislature in 1943 modified its standard policy to provide that the limitations period would expire twelve months "after inception of the loss" insured against. *See id*. Based on the legislative history, this language was construed by the New York Court of Appeals to mean that the period of limitations began to run upon the occurrence of the insured peril. *See id.* at 138-39; *Pomilla v. Great Am. Ins. Co.*, 198 N.E.2d 44, 44-45 (N.Y. 1964).

At the same time, however, New York courts continued to regard more generic language – such as policy provisions foreclosing suit a certain period "after loss or damage" – as triggering the limitations period only "from the time that liability accrues under the provisions of the policy." *Margulies v. Quaker City Fire & Marine Ins. Co.*, 97 N.Y.S.2d 100, 103-04 (App. Div. 1st Dep't 1950) (referring to this principle as "settled law" recognized for almost a century); *see also Parker v. Am. Sur. Co.*, 29 N.Y.S.2d 414, 415-16 (N.Y. Sup. Ct. Monroe County 1941). The phrase "after the inception of the loss" is regarded, in essence, as a term of art which fixes the limitations period to the date of the accident. Other generic language, such as that in the Fabozzis' policy, does not carry this same meaning; instead, it ties the limitations period to the moment when a claim accrues.

While recognizing the long history of this distinction in New York insurance law, the district court relied on three recent cases from New York's Appellate Division – most notably, *Costello v. Allstate Ins. Co.*, 646 N.Y.S.2d 695 (App. Div. 2d Dep't 1996) – which summarily assert a new rule, contrary to the principles formulated by the Court of Appeals. These Appellate Division decisions contain little analysis and misstate long-standing precedent bearing directly on this issue. *Compare*

*Costello*, 646 N.Y.S.2d at 696, *with Steen*, 89 N.Y. at 322-24; *Proc*, 217 N.E.2d at 138-39. The holdings of New York's highest court, which it has never repudiated, presumptively control. Where lower state courts appear to have misconstrued or ignored binding precedent, we are obliged to follow the Court of Appeals. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938) ("[T]he voice adopted by the State as its own (whether it be of its Legislature or of its Supreme Court) should utter the last word." (internal quotation marks omitted)); *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 253 (2d Cir. 2002) ("[T]his Court, sitting in diversity, must follow the holdings of the New York Court of Appeals and must reject inconsistent rulings from its lower courts.").

In a one-page order citing little authority, *Costello*, for example, denied that any distinction existed between the words "date of loss" and "after inception of the loss." Instead, it stated that "[b]oth phrases have consistently been held to refer to the date of the catastrophe insured against, and *not* to the accrual date of the plaintiffs' claim against [the insurer] for failure to pay." *Costello*, 646 N.Y.S.2d at 696. This conclusion was inaccurate at the time it was made and remains inconsistent with the controlling Court of Appeals decisions described above.

Tellingly, the cases cited by *Costello* express no such view of New York law, and certainly do not represent a revision of the long-standing distinction drawn by the New York Court of Appeals. The principal authority, *Myers, Smith & Granady, Inc. v. N.Y. Prop. Ins. Underwriting Ass'n*, 85 N.Y.2d 832 (1995), did not address this issue and involved a policy containing highly specific limitations language. In particular, the *Myers* policy required any action to be brought "within two years after the date on which the direct physical loss or damage occurred." *See* Resp. Br., *Myers*, 1994 WL 16045369, at *11. It is no surprise then that the Court of Appeals accepted,

without any comment, that the limitations period ran from the date of the fire. This result was entirely consistent with the preexisting rule.

*Costello* also cites *Proc*, 217 N.E.2d 136, which discussed at length the century-old distinction drawn by the New York courts. *Proc* explains that a limitations period beginning "after *inception* of the loss," begins to run "from the date of [e.g.] the fire, even though a cause of action against the insurer had not then accrued." 217 N.E.2d at 139 (emphasis added). However, it does not hold the converse: that where a limitations clause lacks this specific language, the period for filing suit *also* begins at the time of the accident. As a result, nowhere did the decision purport to do away with the rule set out in *Steen*. Rather, *Proc* recognized that the state legislature's adoption of a standard policy with a limitations period running from the "inception of the loss" was an effort to conform to the courts' long-running view – by providing standard policy language with the required specificity. *See id.* at 137-39. Finally, *Costello* cites *Soltex Thread Co. v. Rueff Bros.*, 489 N.Y.S.2d 210 (App. Div. 1st Dep't 1985), which does not identify or describe the underlying policy language, making it impossible to know how the contract's limitations provision was interpreted. Altogether, these various authorities in no way stand for the rule that *Costello* announces, and we can identify no other support.[2]

2.    Application

The Fabozzis' policy provides that the limitations period would expire "two years after the date of loss," a threshold that New York courts have long regarded as signifying the date on which

---

[2] The remaining two cases cited by the district court in its memorandum simply point to *Costello* without further analysis or elaboration. *See Klawiter v. CGU/OneBeacon Ins. Group*, 810 N.Y.S.2d 756 (App. Div. 4th Dep't 2006); *Roberts v. New York Property Ins. Underwriting Ass'n*, 677 N.Y.S.2d 621 (App. Div. 2d Dep't 1998).

8

the claim accrues, not the date on which damage was incurred. *See Koppelman v. Standard Fire Ins. Co.*, No. CV-05-2496, 2008 WL 789882, at *6 (E.D.N.Y. Mar. 21, 2008) (reaching a similar conclusion); *Myers v. Cigna Property and Casualty Ins. Co.*, 953 F. Supp. 551, 555-56 (S.D.N.Y.1997) (applying New York law and holding that where the time bar provision "does not refer to the 'inception' of the loss or damage or to the 'event from which the loss or damage arises,'" the one year limitation begins to run after claim is due and payable "as opposed to the date of loss or damage to the insured property."); *see also* 71 N.Y. Jur. 2d Insurance § 2528 (2010) (noting "[w]hether a contractual time limitation contained in a property insurance policy begins to run from the occurrence of the specific event insured against or from a later date depends upon the precision of the language used therein" and that language such as "after the happening of the loss" is considered to be "lacking in precision" such that the limitations "period is computed not from the time of the occurrence of the physical loss . . . but from the time that liability accrues"). We adhere to that view here.

Despite the prevailing rule, Lexington argues that other uses of the word "loss" within the Fabozzis' insurance policy confirm its interpretation of the limitations provision. While "loss" is used frequently throughout the contract in other contexts, it is never defined. Instead, the policy's definitions section refers to "occurrence." This latter term "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results . . . in (a) 'Bodily injury'; or (b) 'Property damage.'" If Lexington intended to draft around New York's century-old interpretation of its limitations language – by tying this period to the date of the "occurrence" or accident – it could readily have done so. At most, the other uses of "loss" in the contract render that term ambiguous. In the absence of other extrinsic evidence as to the parties'

9

intent, it is well-settled law that where an insurer has drafted the policy, as here, "any ambiguity in [the] ... policy should be resolved in favor of the insured." *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir. 1994). In this case, the interpretation proffered by the Fabozzis is also consistent with the New York Court of Appeals' long-standing construction of limitations clauses. What remains, then, is a determination of when the Fabozzis' claim actually accrued.

For limitations purposes, a claim generally accrues only once the conditions precedent to filing suit have been satisfied. *See Steen*, 89 N.Y. at 323. In many cases, like *Steen*, those conditions are met when payment on any claim on the policy becomes due and enforceable. *See id.* More generally, unless the contract provides otherwise, a cause of action for breach of an insurance contract accrues at the time of breach under New York law. *See Med. Facilities, Inc. v. Pryke*, 465 N.E.2d 39, 41 (N.Y. 1984). Because, in this case, the district court held that the limitations period ran from the date of the accident, it did not consider what conditions were precedent to filing suit, nor did it determine at what point a breach occurred. In their papers, the Fabozzis briefly suggest that those conditions precedent include the duties imposed on the insured by the contract in the event of loss: i.e., the requirement that they give written notice of the accident to Lexington, protect the property from further damage, provide requested records and documents, and submit to oral examination under oath. But it would make little sense to hold that a cause of action accrues only when the insured decides to comply with his or her duties after an accident. That approach would put the limitations period entirely in the hands of the insured, rewarding delay and sowing confusion.

Because we do not have the benefit of full briefing or a district court ruling on this question, however, we decline to resolve it in the first instance. The case is remanded to the district court so

10

that it may consider when the Fabozzis' claim accrued and whether, in light of this determination, their suit was timely.

## III.    CONCLUSION

The judgment of the district court is vacated and the case is remanded for further proceedings.