21-1758-cv
*Nuance Communications, Inc. v. International Business Machines Corp.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of December, two thousand twenty-two.

Present:

> GERARD E. LYNCH,
> WILLIAM J. NARDINI,
> STEVEN J. MENASHI,
> *Circuit Judges*.

---

NUANCE COMMUNICATIONS, INC.,

*Plaintiff-Appellant*,

v.                                                                           21-1758-cv

INTERNATIONAL BUSINESS MACHINES CORPORATION,

*Defendant-Appellee*.

---

| | |
|---|---|
| For Plaintiff-Appellant: | GREGORY SILBERT, Weil, Gotshal & Manges LLP, New York, NY (David J. Lender, Adam B. Banks, Jessica L. Falk, Robert W. Taylor, Angelo G. Labate, Weil, Gotshal & Manges LLP, New York, NY, David Greenbaum, Nuance Communications, Inc., Mahwah, NJ, *on the brief*) |
| For Defendant-Appellee: | KEVIN S. REED (William B. Adams, *on the brief*), Quinn Emmanuel Urquhart & Sullivan, LLP, New York, NY |

Appeal from a judgment of the United States District Court for the Southern District of New York (Eduardo C. Robreno, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Nuance Communications appeals from a final judgment of the United States District Court for the Southern District of New York (Eduardo C. Robreno, *Judge*), entered on June 21, 2021, following a bench trial.[1] The district court found in favor of Defendant-Appellee International Business Machines Corporation ("IBM") after concluding that Nuance's breach of contract claim was barred by the running of a two-year limitations period in the parties' September 2010 Software License Agreement ("SLA"). Nuance had alleged that IBM withheld "updates" to the licensed artificial intelligence software technology DeepQA that Nuance was entitled to receive under a provision of the SLA. Nuance specifically argued, among other things, that the SLA entitled it to DeepQA updates developed anywhere in IBM, including as relevant here updates developed by IBM subdivision the IBM Software Group ("IBM Software"), and not, as IBM contended, solely updates developed by another subdivision, the IBM Research Group ("IBM Research"). We assume the reader's familiarity with the case.

Following a bench trial, this Court reviews a district court's findings of fact for clear error and its conclusions of law *de novo*. *Citibank, N.A. v. Brigade Capital Mgmt., LP*, 49 F.4th 42, 58 (2d Cir. 2022). "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 271

---

[1] Judge Robreno, of the United States District Court for the Eastern District of Pennsylvania, sat by designation.

(2d Cir. 2021) (citation omitted).  This Court is "free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 396 n.2 (2d Cir. 2018) (citation omitted).

Nuance argues that the district court erred by concluding that its claim was time-barred under the SLA.  We disagree.  Under New York law, there is a six-year statute of limitations period for breach of contract suits, which can be shortened by contract to any reasonable period.  N.Y. C.P.L.R. §§ 201, 213(2); *see Executive Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y.3d 511, 518 (2014).  Although a limitations period ordinarily begins running at the time the cause of action accrues, "exceptionally clear" language in the contract that sets the start of the limitation clock at another time will control.  *Fabozzi v. Lexington Ins. Co.*, 601 F.3d 88, 91 (2d Cir. 2010) (citing *Steen v. Niagara Fire Ins. Co.*, 89 N.Y. 315, 324 (1882)).  Here, the SLA provides that "[n]either party may bring an action arising out of this Agreement, regardless of form, more than two years after the cause of action has accrued and the party obtained knowledge thereof."  Joint App'x 1242. The parties agree that actual knowledge is the applicable requirement to start that two-year limitation clock.  In New York, the test for actual knowledge is subjective and may be satisfied by circumstantial evidence.  *Hartford Accident & Indem. Co. v. Am. Express Co.*, 74 N.Y.2d 153, 162 (1989); *Woloszynowski v. N.Y. Cent. R. Co.*, 254 N.Y. 206, 208–09 (1930).

In Nuance's view, the district court's timeliness conclusion was error because the district court: (a) wrongly applied a willful blindness standard to conclude that Nuance had actual knowledge of IBM's breach of the SLA, and (b) did not independently find that Nuance had actual knowledge of IBM's breach as a matter of fact without relying on willful blindness.  Because we reject the latter argument, we need not reach the former.  Namely, we conclude that the district court made an independent factual finding that Nuance had actual knowledge of a breach for more

3

than two years before filing suit, a finding that was not clearly erroneous.

As an initial matter, the district court stated that the limitations issue turned on actual knowledge, specifically, "whether Nuance obtained actual knowledge prior to June 30, 2014, that IBM was not providing it with DeepQA updates developed by IBM Software as required under the agreement."[2] Special App'x 47–48. The district court concluded that actual knowledge could be inferred from the evidence that, before June 30, 2014, Nuance knew two critical facts forming IBM's breach of the SLA: (1) that IBM Software was developing updates to its DeepQA technology, and (2) that IBM was withholding code developed by IBM Software. Under Nuance's contemporaneous interpretation of the SLA (which the district court concluded was correct in relevant part), those two findings alone constituted a reasonable factual finding that Nuance actually knew that IBM was in breach of the SLA provision governing updates to DeepQA well before the contractual limitations period.

The district court detailed at length the evidence supporting each of its underlying factual findings of Nuance's actual knowledge of IBM's breach. First, the district court pointed to the testimony of, and emails exchanged between, senior executives at both IBM and Nuance demonstrating that Nuance knew that IBM Software was creating updates to DeepQA. For example, the district court highlighted a 2012 email from Nuance's former chief information officer to its then-chief executive officer explaining that IBM had "done work on 'vanilla' productization of Watson, solely in . . . IBM [Software]. They took an image of the code and have gone on their own."[3] Special App'x 49 (quoting Joint App'x 1084). Similarly, the district court

---

[2] Because Nuance filed suit against IBM on June 30, 2016, the question is whether the limitations period began running more than two years prior to that date—i.e., before June 30, 2014.

[3] "Watson" is the name given by IBM to projects developing the DeepQA code. In 2011, IBM's DeepQA, operating as a computer program named Watson, gained public attention when Watson appeared as a contestant on episodes of the trivia game show *Jeopardy!* and prevailed over former *Jeopardy!* champions.

relied on testimony indicating that Nuance was aware that IBM Software had done "'software hygiene or productization' work"—"the kinds of work you might do to make sure that you can apply it to a number of third-party kinds of customers." Special App'x 49–50 (quoting Joint App'x 1437). Second, in support of its finding that Nuance knew IBM was withholding DeepQA code developed by IBM Software, the district court relied on the testimony of both parties' senior executives as well as internal Nuance communications. For example, one internal memorandum starkly showed that in 2013, Nuance understood both that IBM Software was "not allowing any joint work with IBM Research to occur . . . to be absolutely sure that none of [IBM Software's] work [was] to be made available to Nuance," and that this conduct flowed from IBM's differing interpretation of the SLA's updates provision. Special App'x 52–53 (quoting Joint App'x 1108). Likewise, deposition testimony established that Nuance was aware that it would receive "only what's from [R]esearch," not "anything from [S]oftware," and that "IBM had erected a virtual firewall" for the purpose of preventing Nuance from "claiming [IBM Software]'s DeepQA commercialization work." Special App'x 51–53 (internal quotation marks omitted). Upon our review of this evidence, and the evidence in the entire record, the district court's finding of actual knowledge does not amount to clear error. *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011) ("The fact that there may have been evidence to support an inference contrary to that drawn by the trial court does not mean that the findings are clearly erroneous."). Rather, it serves as a ground with support in the record on which we may affirm.[4] *Wells Fargo*

---

[4] We acknowledge that the district court goes on to apply a willful blindness standard to Nuance's competing evidence that it had sought and received general reassurances that IBM was not in breach of the SLA, and that the district court separately concluded on that basis that the evidence still supported its conclusion that Nuance actually knew of IBM's breach. Because we read the district court's analysis to find Nuance's actual knowledge of IBM's breach as a matter of fact without reliance on the willful blindness doctrine, we express no view on the district court's application of the doctrine as a means of determining actual knowledge, either as the doctrine is generally applied in New York or as the district court specifically applied it in this case.

*Advisors, LLC*, 884 F.3d at 396 n.2.

*     *     *

We have considered Nuance's remaining arguments and find them unpersuasive. Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk