THOMAS J. McAVOY, Senior United States District Judge
I. INTRODUCTION
Plaintiff Kyle Endemann commenced this action seeking to recover damages based upon Defendant Liberty Insurance Corporation's ("Liberty" or "Defendant") alleged failure to pay Plaintiff's property insurance claim under his homeowners insurance policy. Defendant moves to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons that follow, the motion is granted in part and denied in part.
II. BACKGROUND
a. Procedural
This action relates to property damage for which Plaintiff seeks recovery under his homeowners insurance policy issued by Defendant. Am. Compl. ¶¶ 6-7. Plaintiff filed the Summons and Complaint in the New York State Supreme Court, Madison County, on January 22, 2018. Defendant removed the action to this Court, Dkt. No. 1, and filed a motion to dismiss. Dkt. No. 5.
*367 In response to that motion, Plaintiff filed the Amended Complaint, Dkt. No. 9, asserting new factual allegations and legal conclusions but no new causes of action. The original motion was denied as moot, Dkt. No. 12, and the matter is now before the Court on Defendant's motion to dismiss the Amended Complaint. Dkt. No. 13. The Amended Complaint alleges causes of action sounding in Declaratory Judgment (First Cause of Action), Breach of Contract (Second Cause of Action), Violation of the Duty of Good Faith and Fair Dealing (Third Cause of Action), and Violation of General Business Law § 349 (Fourth Cause of Action).
b. Factual[1]
Plaintiff owns his home located at 214 Driftwood Dr., Oneida, New York ("the Home"). Am. Compl. ¶ 5. Defendant sold Plaintiff a LibertyGuard Deluxe Homeowners Policy No. H37-228-506632-40 (the "Policy") with a policy period of June 29, 2013 through June 29, 2014 "insuring Plaintiff against risk of, among other things, water loss and damage to the Home, subject to certain conditions and exclusions in the Policy." Id. ¶ 6. "On or about February 21, 2014, Plaintiff's neighbor Edward Dubois discharged a large quantity of water above ground from his sump pump downhill to the Home, which then entered the Home causing significant water and related damage to the Home and to Plaintiff's contents ("the Loss")." Id. ¶ 7. Shortly thereafter, Plaintiff notified Defendant of water damage in his home. Id. ¶ 8.
On March 3, 2014, Plaintiff's public adjuster, Darin Checchia, had a meeting with Defendant's adjuster, Kim Guignard, in the basement of the Home without Plaintiff present. Id. ¶ 9, 11-12. Prior to this meeting, Ms. Guignard was "made aware ... that Plaintiff's neighbor ... was the cause of his loss due to the fact that [the neighbor] illegally diverted his sump pump discharge with a mechanical device directly at his house above ground causing a direct physical loss to his basement, garage, patio, yard and foundation." Id. ¶ 10. After Ms. Guignard left, Mr. Checchia handed Plaintiff a check for $10,500. Am. Compl. ¶¶ 9-12. Plaintiff later learned that Defendant chose to adjust the claim under the Policy's backup of sewer/sump pump overflow and debris removal endorsements, and, in doing so, paid the full amount of the Policy limits related thereto. Id. ¶ 13-15. "It was never communicated to Plaintiff by Defendant that his loss was covered in full under the Policy." Id. ¶ 13. However, "the loss clearly exceeded those limits and was covered in full under the Policy up to the policy limits." Id. ¶ 14. When Plaintiff received Defendant's March 3, 2014 letter referencing "that Plaintiff's sump pump failed" and requesting information about the installation and repair of the "failed sump pump," Plaintiff immediately contacted Defendant "stating that [he] did not have a sump pump on the date of his loss." Id. ¶ 15.
Sometime prior to August 26, 2014, Plaintiff "called his insurance agent to see if they would collaborate with [Plaintiff] by subrogating against Adirondack Insurance (Dubois' insurance company) at the same time Plaintiff filed a lawsuit against Dubois so they could get their $10,500 back that they paid [Plaintiff] on March 3, 2014." Id. ¶ 16. Plaintiff's insurance agent told him that he needed to speak with a team member from Liberty's subrogation department. Id. On August 24, 2014, Plaintiff *368 drafted a letter to Defendant asking "if you would like to work with me in regards to getting reimbursed the $10,500 that you paid out on my claim dated February 21, 2014." Am. Compl. Ex. B. Plaintiff indicates in this letter, inter alia , "I am out a total of between $80,000 - $85,000 due to Edward Dubois diverting his water onto my property for over a month causing damage to my basement, garage, and foundation." Id. When Plaintiff spoke with a Liberty subrogation department team member, he was told that there was very little chance that any of the monies would be recouped. Am. Compl. ¶ 16. Plaintiff then called Liberty's corporate office and spoke to a President's Service Team representative. Id. Plaintiff sent this representative "all his information proving that his neighbor was the cause of his loss. The representative stated that the team would take a look at his situation and contact him as soon as they came to a decision." Id. Approximately a month later, "Plaintiff received a phone call from Defendant ... stating that they were going to subrogate against Adirondack Insurance on his behalf for his deductible and the monies they paid him." Id. ¶ 18. In October 2014, Plaintiff received correspondence from the law firm handling the subrogation case for Defendant. Id. ¶ 19. Plaintiff asserts that, based upon his telephone calls and the information provided to Defendant's representatives, "Defendant was aware of Plaintiffs entire situation, ... including the fact that Plaintiff did not have a sump pump on his date of loss along with all his documentation to prove the fact that his neighbor was the cause of his damages as of this date." Id. ¶ 20.
Plaintiff contends that "[p]rior to June 5, 2017," his former attorney corresponded with Defendant's representative, Gary Peters, in regard to Plaintiff filing a new claim. Id. ¶ 21. Plaintiff was advised that a new adjuster was assigned to his matter, and that his former attorney had sent to Mr. Peters all of Plaintiff's "work product and professional reports." Id. When Plaintiff learned that Mr. Peters had not received the professional reports, "Plaintiff personally resent them on June 9, 2017." Id.
On June 5, 2017, Plaintiff tried to reach his new adjuster by telephone to file a new claim, but the adjuster was not available so Plaintiff contacted the adjuster's manager, Heather Campbell. Id. ¶ 22. During a conversation with Ms. Campbell, Plaintiff explained "that in 2016 Plaintiff began to notice substantially increased damage to his home. Plaintiff further explained that he hired several professionals that evaluated, inspected and gave estimates for damage that had begun to show itself in 2016. These professionals stated without question that all the new damages were directly tied back to his neighbor diverting of his sump pump discharge at his home." Id. Ms. Campbell informed Plaintiff that he "could not file a new claim because his original claim was for the same date of loss as the new claim Plaintiff was attempting to file and that his original claim was still open." Id. ¶ 22; see also id. ¶ 25 ("Plaintiff was told by Ms. Campbell that his original claim from his date of loss was still open and active during their phone conversation on June 5, 2017."). Plaintiff then stated that the claim was not properly adjusted. Id. ¶ 22.
[Ms. Campbell] responded that his sump pump malfunctioned and that was the only coverage Plaintiff had that would pertain to his loss. Plaintiff told her that he did not have a sump pump on the date of loss. He told Ms. Campbell that he responded to Ms. Guignard's March 4, 2014 letter and advised Defendant that he had no sump pump on the date of loss, and that Defendant was made aware of this again in August 2014 when *369 Plaintiff sent all his information to Defendant's President's Service Team for them to subrogate against his neighbor to recoup the $10,500 they paid out on the back up of sewer/sump pump overflow endorsement. Ms. Campbell then asked Plaintiff if he had drains around his house. Plaintiff confirmed he did and she stated that they overflowed and that they paid me out for that. She again reiterated that Plaintiff was already paid out by Defendant and that the only coverage he had was the back up of sewer/sump pump overflow endorsement. At that point, Plaintiff asked to speak with her manager. Plaintiff then reached out to Mike Famiglietti.
Id.
On June 7, 2017, Plaintiff sent letters via email to both Mr. Famiglietti and Ms. Campbell requesting that they re-examine "his current open and active claim with Defendant from his date of loss on February 21, 2014." Id. ¶ 25. On June 9, 2017, Plaintiff's professional reports were emailed to Mr. Peters, Ms. Campbell, and Mr. Famiglietti. Id. ¶ 26.
Defendant denied the claim by letter on June 12, 2017, but the letter "does not cite or identify any Policy conditions, exclusions and/or limitations, including the limitations period for suing Defendant following a loss." Id. ¶ 27. On June 14, 2017, Plaintiff responded to Defendant's denial letter by pointing out "that they were not in compliance with the Unfair Claim Practices Act and applicable regulations ( New York Insurance Law § 2601 and 11 N.Y. C.R.R. § 216, et seq.), which clearly provides that Defendant must identify the facts that they relied upon to trigger each specific exclusion. It was unclear from Defendant's June 12, 2017 first disclaimer letter whether they denied that Plaintiff's neighbor's wrongful discharge of his water from his sump pump caused his damage. Plaintiff asked them several questions and made numerous statements in his letter." Id. ¶ 28.
On June 19, 2017, Plaintiff received a second letter from Defendant. This "denied his claim under the surface water exclusion and the settlement exclusion even though they confirmed that his direct physical loss was due to his neighbor's negligence. This supplemental disclaimer does not cite or identify any Policy conditions or limitations, including the limitations period for suing Defendant following a loss, as grounds for the disclaimer." Id. ¶ 29. "After June 19, 2017, Plaintiff spoke with Ms. Campbell and Mr. Famiglietti by telephone in which Plaintiff clearly stated the facts of how they misinterpreted their own Policy and thus mis-adjusted his claim. Plaintiff then communicated to both all the ... reasons how they egregiously mishandled his claim." Id. ¶ 30. This action followed.
III. STANDARD OF REVIEW
On a Fed. R. Civ. P. 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[ ] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman , 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions, non-factual matter, or "conclusory statements" set forth in a complaint. Ashcroft v. Iqbal , 556 U.S. 662, 678-79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); see also Bell Atl. Corp. v. Twombly , 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (stating that a court is "not bound to accept as true a legal conclusion couched as a factual allegation").
In considering a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in *370 the complaint." DiFolco v. MSNBC Cable L.L.C. , 622 F.3d 104, 111 (2d Cir. 2010). When documents attached to the complaint as exhibits or incorporated by reference in the complaint contain statements that contradict the allegations in the complaint, the documents control and the Court need not accept the allegations as true. Roth v. Jennings , 489 F.3d 499, 510-11 (2d Cir. 2007) ; Hill v. Napoli , 2014 WL 1322476 at *8 (W.D.N.Y. Mar. 31, 2014) ("Because the documents incorporated into Plaintiff's Complaint contradict his allegations, the Court need not accept [the allegations] as true."); Brown v. New York City Hous. Auth. , 2006 WL 1378599 at *1 (S.D.N.Y. May 17, 2006) ("However, where allegations set out in the complaint are contradicted by other matters asserted or by materials attached to or incorporated by reference in the complaint, the Court is not obliged to credit the allegations in the complaint.").
"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal , 556 U.S. at 678, 129 S.Ct. 1937 (quoting Twombly , 550 U.S. at 570, 127 S.Ct. 1955 ). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint must contain "more than labels and conclusions, and a formulaic recitation of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S.Ct. 1955. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius , 618 F.3d 162, 170 (2d Cir. 2010). "A complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." Port Dock & Stone Corp. v. Oldcastle NC. Inc. , 507 F.3d 117, 121 (2d Cir. 2007) ; see Mayor & City Council of Balt. v. Citigroup, Inc. , 709 F.3d 129, 135 (2d Cir. 2013) ("a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' ").
IV. DISCUSSION
a. Limitations Period
Although New York has a six year statute of limitations for breach of contract claims, see C.P.L.R. § 213(2),[2] here the Policy contains a two-year suit limitations period. The Policy provides at "Section I - Conditions": "No action can be brought against us unless there has been full compliance with all of the terms under Section I of this policy and the action is started within two years after the inception of the loss. For purposes of this condition, inception of the loss means the date on which the direct physical loss or damage occurred." Policy, § 1, ¶ 8. Defendant contends that this action is barred by this suit limitations period.
New York Courts have consistently allowed parties, by written agreement, to impose a shorter period within which to *371 commence an action than that provided by statute so long as the agreed upon limitation is reasonable. Executive Plaza, LLC v. Peerless Ins. Co. , 22 N.Y.3d 511, 982 N.Y.S.2d 826, 5 N.E.3d 989 (N.Y. 2014) ; Epstein v. Hartford Life & Accident Ins. Co. , 449 Fed. Appx. 46, 47 (2d Cir. 2011) ; Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan , 572 F.3d 76, 78 (2d Cir. 2009). Defendant has the initial burden of establishing that the limitations period in the Policy expired prior to the commencement of the action. N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc. , 477 F. Supp. 2d 576, 582 (S.D.N.Y. 2006) (citations omitted). "Once the defendant has met its burden, the plaintiff has the burden 'to aver evidentiary facts establishing that the case at hand falls within an exception to the limitations period,' such as waiver or estoppel." Id. (quoting Neary v. Nationwide Mut. Fire Ins. Co. , 17 A.D.3d 331, 791 N.Y.S.2d 840, 840 (2005) ).
Defendant argues that because Plaintiff pleads that "the Loss" occurred "on or about February 21, 2014," Am. Comp. ¶ 7, yet the action was not commenced until January 22, 2018, the action is time barred. This satisfies Defendant's initial burden, shifting the burden to Plaintiff to point to evidentiary facts that would plausibly establish that the case falls within an exception to the limitations period. Plaintiff asserts that the breach of contract claim did not accrue until Defendant issued its disclaimer letters, that the Policy is ambiguous as to when the suit limitations period begins to run, and that a suit limitations defense is barred by waiver and estoppel.
1. Accrual
Relying on Executive Plaza , Plaintiff argues that under the circumstances of this case, where Defendant kept Plaintiff's claim "open and active" for over three years after the loss and did not disclaim coverage until after the two year suit limitations period expired, the breach of contract claim accrued at the time of disclaimer. In Executive Plaza , the New York Court of Appeals addressed a plaintiff-insured's claim under a fire policy which required the plaintiff to commence suit under the policy within two years of a fire. The policy also provided that if the insured sought to recover replacement costs of damaged property, the insured was to forbear on making any such claim until the property had actually been replaced. The plaintiff's initial claim for replacement costs, brought within the two-year limitations period, was dismissed as premature because it was brought before the property had been replaced. The subsequent claim brought after the property was replaced was dismissed because it was brought more than two years after the fire. The Court of Appeals found that "[i]t is neither fair nor reasonable to require a suit within two years from the date of the loss, while imposing a condition precedent to the suit-in this case, completion of [repair or] replacement of the property-that cannot be met within that two-year period." Id. at 518, 982 N.Y.S.2d 826, 5 N.E.3d 989. The Court held that "[a] 'limitation period' that expires before suit can be brought is not really a limitation period at all, but simply a nullification of the claim." Id. Finding that the problem with the limitation period in that case was not its duration, "but its accrual date," the Court held that the limitations period for the replacement property claim could not be deemed to have run from the date of the fire. Id.
Here, the allegations in the Amended Complaint fail to establish that Plaintiff was required to satisfy a condition precedent before bringing an action to recover the additional damages to his home which he now seeks. Further, Plaintiff's allegations *372 do not establish that the Policy, or any action by Defendant, presented a barrier to the commencement of a lawsuit to recover against Defendant when Plaintiff first determined he did not receive the relief he contends he is entitled. See e.g., Brown v. Royal Ins. Co. of America , 210 A.D.2d 279, 279, 620 N.Y.S.2d 399, 400 (N.Y. App. Div. 1994) ("Delay by the insurance carrier in completing its investigation of the claim does not excuse the plaintiff from timely commencing an action, since he or she is bound by the terms of the contract to either commence an action prior to the expiration of the limitations period or obtain a waiver or extension of such provision.")(citations omitted). There is no merit to the argument that, under Executive Plaza , Plaintiff's breach of contract claim did not accrue until Defendant issued its disclaimer letters.
2. Beginning of the Suit Limitations Period
Plaintiff cites to Hirth v. American Ins. Co. , 2016 WL 75420 (S.D.N.Y. Jan. 7, 2016) and Villa v. Sterling Ins. Co. , 28 Misc.3d. 90, 907 N.Y.S.2d 770 (N.Y. App. Div. 2010), to support an argument that the Policy is ambiguous as to when the suit limitations period begins to run. Plaintiff's reliance on these cases is misplaced.
In Hirth , the policy requirement that suit be brought within two years of "the occurrence," but the policy contained two items listed in the definition of the term "occurrence" ("accidental loss" and "damage to covered property"). 2016 WL 75420, at *6. The Southern District found that the ambiguity in the limitations provision prevented granting the motion to dismiss. Id. , at *8. Here, Plaintiff has not pointed to more than one definition of the "inception of the loss," the date the suit limitations period began. Thus, Hirth is inapposite to the instant matter.
In Villa v. Sterling Insurance Co. , the court considered a policy provision stating that "[n]o suit to recover for any property claim may be brought against us unless ... the suit is commenced within 2 years after the loss," holding that this language was ambiguous because the term "loss" was not defined in the policy. 907 N.Y.S.2d at 771. Construing the ambiguity against the drafter, the court found that the limitations period began to run when the insurer breached, not when the fire occurred. See id., at 772. Here, by contrast, the limitations period does not run from the "loss," but rather from "the inception of the loss." Furthermore, the Policy defines "the inception of the loss" to mean "the date on which the direct physical loss or damage occurred." As explained below, this differentiation in the time limitation language used in the Policy and in Villa defeats Plaintiff's argument under Villa .
"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." Olin Corp. v. Am. Home Assurance Co. , 704 F.3d 89, 98 (2d Cir. 2012) (footnote omitted). Specifically, " 'words and phrases [in a contract] should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions.' " Id. at 99 (alteration in original) (quoting LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp. , 424 F.3d 195, 206 (2d Cir. 2005) ). If the insurance policy is ambiguous,[3] the *373 Court may consider extrinsic evidence to determine the parties' intent in the formation of the policy, id. , and "if the extrinsic evidence does not yield a conclusive answer as to the parties' intent, a court may apply other rules of contract construction, including the rule of contra proferentem ," which resolves the ambiguity in an insurance policy drafted by the insurer in the insured's favor. Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co. , 472 F.3d 33, 43 (2d Cir. 2006) (alteration, internal quotation marks, and citation omitted). However, the Policy language indicating that "the inception of the loss" means "the date on which the direct physical loss or damage occurred" is clear and unambiguous. " 'Direct' and 'physical' plainly modify both 'loss' and 'damage.' So on its face, the provision unambiguously refers to a single date: the one on which the fire, or storm, or flood, or other physical event occurs." Classic Laundry & Linen Corp. v. Travelers Cas. Ins. Co. of Am. , No. 16-CV-5440 (CS), 2017 WL 4350610, at *4 (S.D.N.Y. June 30, 2017), aff'd , 739 F. App'x 41 (2d Cir. 2018).[4]
Furthermore, "both the Second Circuit and the New York Court of Appeals have analyzed the language 'after the date on which the direct physical loss or damage occurred' " to mean that any lawsuit must be filed within the specified period of time from the date of the physical loss or damage. Classic Laundry & Linen , 2017 WL 4350610, at *5.
In Myers, Smith & Granady, Inc. v. New York Property Insurance Underwriting Ass'n , 85 N.Y.2d 832, 623 N.Y.S.2d 840, 647 N.E.2d 1348 (N.Y. 1995), the New York Court of Appeals upheld the lower court's decision that an identical limitations provision meant that any action commenced two years after the fire was time-barred. See Fabozzi v. Lexington Ins. Co. , 601 F.3d 88, 92 (2d Cir. 2010) (noting that the insurance policy in Myers contained language that action must be brought "within two years after the date on which the direct physical loss or damage occurred," and that it was "no surprise ... that the Court of Appeals accepted, without any comment, that the limitations period ran from the date of the fire") (internal quotation marks omitted). In Fabozzi , the Second Circuit held that the limitations period began to run on the date the claim accrued rather than on the date the damage occurred, but it was analyzing different language: that the action had to be started within "two years after the date of loss." Id. at 93 (internal quotation marks omitted). Indeed, courts interpreting New York insurance contracts routinely dismiss insureds' claims as time-barred, based on limitations clauses identical to that found here, if the action is commenced more than two years from the fire or other physical event. See, e.g., New Image Roller Dome, Inc. v. Travelers Indem. Co. of Ill. , 310 Fed. Appx. 431, 432 (2d Cir. 2009) (summary order); Pfeffer v. Harleysville Grp., Inc. , No. 10-CV-1619, 2011 WL 6132693, at *7 (E.D.N.Y. Sept. 30, 2011), aff'd , 502 Fed. Appx. 28 (2d Cir. 2012) (summary order); Plon Realty Corp. v. Travelers Ins. Co. , 533 F. Supp. 2d 391, 396-97 (S.D.N.Y. 2008).
Id.
As the Southern District points out in *374 T.N. Metro Holdings, I, LLC v. Commonwealth Ins. Co. , No. 11-CV-6063 (KMK), 2016 WL 7243554 (S.D.N.Y. Dec. 14, 2016), "[t]he Second Circuit held [in Fabozzi ] that the magic phrase ' 'after the inception of the loss' is regarded ... as a term of art which fixes the limitations period to the date of the accident.' " Id. , at *5 (quoting Fabozzi , 601 F.3d at 91 ).
Plaintiff alleges that "[o]n or about February 21, 2014, Plaintiff's neighbor Edward Dubois discharged a large quantity of water above ground from his sump pump downhill to the Home, which then entered the Home causing significant water and related damage to the Home and to Plaintiff's contents ('the Loss')." Am. Compl. ¶ 7. By this allegation, it is clear that "the inception of the loss" occurred on February 21, 2014, and that Plaintiff understood this to be the case. Thus, absent waiver or estoppel, Plaintiff's breach of contract claim is barred by the suit limitations period contained in the Policy.
3. Waiver and Estoppel
Plaintiff asserts that "Defendant is estopped to assert the [suit limitations defense] on two grounds." Pl. Mem. L., at 10.
A. Equitable Estoppel
First, Plaintiff argues that under the doctrine of equitable estoppel, Defendant should be prevented from raising the suit limitations defense because the "Verified Amended Complaint alleges misrepresentations and deception by Defendant that Plaintiff reasonably relied on to not commence this action." Id. In this regard, Plaintiff cites to his allegations that he was told his claim was "open and active," and that he "received partial payment until his claim was finally denied in June 2017." Id.
"Under the principles of estoppel, an insurer, though in fact not obligated to provide coverage, may be precluded from denying coverage upon proof that the insurer 'by its conduct, otherwise lulled [the insured] into sleeping on its rights under the insurance contract.' " Provencal, LLC v. Tower Ins. Co. of New York , 138 A.D.3d 732, 734, 30 N.Y.S.3d 138 (N.Y. App. Div. 2016) (quoting Gilbert Frank Corp. v. Federal Ins. Co. , 70 N.Y. 2d 966, 968, 525 N.Y.S.2d 793, 520 N.E.2d 512 (N.Y. 1988) ). "To establish estoppel, 'plaintiff must offer evidence that [he] was misled or lulled by the defendant into failing to bring its claim in a timely manner.' " N. Am. Foreign Trading Corp. v. Mitsui Sumitomo Ins. USA, Inc. , 477 F. Supp. 2d 576, 582 (S.D.N.Y. 2006) (quoting Enterprise Eng'g, Inc. v. Hartford Fire Ins. Co. , No. 04 Civ. 5018, 2004 WL 2997857, at *3 (S.D.N.Y. Dec. 23, 2004) ). "Estoppel requires proof that the insured has suffered prejudice by virtue of the insurer's conduct." Provencal, 138 A.D.3d at 734, 30 N.Y.S.3d 138 (citing Allstate Ins. Co. v. Gross , 27 N. Y. 2d 263, 269, 317 N.Y.S.2d 309, 265 N.E.2d 736 (N.Y. 1970)) ; Brink v. Hanover Fire Ins. Co. , 80 N.Y. 108, 113 (N.Y. 1880) ; Legum v. Allstate Ins. Co. , 33 A.D. 3d 670, 821 N.Y.S.2d 895 (N.Y. App. Div. 2006) ; Greater N.Y. Sav. Bank v. Travelers Ins. Co. , 173 A.D. 2d 521, 522, 570 N.Y.S.2d 122 (N.Y. App. Div. 1991) ; Guberman v. William Penn Life Ins. Co. of N.Y. , 146 A.D.2d 8, 12, 538 N.Y.S.2d 571 (N.Y. App. Div. 1989). The conduct that purportedly mislead or lulled Plaintiff into failing to bring a timely action must have occurred within the limitations period. N. Am. Foreign Trading Corp., 477 F. Supp. 2d at 582 (citation omitted).
Turning first to Plaintiff's argument that Defendant is estopped from asserting a limitations defense because he was told his claim was "open and active," this statement was made during a June 5, 2017 telephone call with Defendant's manager, Heather Campbell. Am. Compl. ¶¶ 22, 25. Even assuming that this conduct lulled Plaintiff into sleeping on his right to *375 commence an action, it is insufficient to support estoppel because at the time of the conversation the two-year suit limitations period had already expired. Thus, Plaintiff could not establish that he suffered prejudice caused by the conduct inasmuch as, at the time, it was already too late to commence an action. See Plon Realty Corp. v. Travelers Ins. Co. , 533 F. Supp. 2d 391, 396 (S.D.N.Y. 2008) ("April 19, 2004, the date of the purported denial letter, is over two years from the February 8, 2002 date of the alleged loss. Whether the correspondence mentioned the time to sue defense or not, it was already too late for Plon to commence an action."); Gardner-Denver Co. v. Dic-Underhill Constr. Co. , 416 F. Supp. 934, 937 n. 8 (S.D.N.Y. 1976) ("In general, to operate as a waiver by the company of, or an estoppel to assert, a condition in the policy limiting the time in which suit shall be brought after the loss, the act or declaration relied upon must be done or made during the running of the period of limitation, or at least commenced during such period, since acts taking place entirely after the expiration period cannot be said to have induced the insured not to bring action within the period.") (quotation marks and citation omitted).
Turning to Plaintiff's argument that Defendant is estopped from asserting a limitations defense because Plaintiff "received partial payment" on his claimed damages, Plaintiff fails to identify how this action caused him to sleep on his right to bring a timely action. As early as August 24, 2014, Plaintiff wrote to Defendant inquiring about a subrogation action to obtain reimbursement for the $10,500 that Defendant paid Plaintiff February 21, 2014, and stated that he was "out a total of between $80,000-$85,000 due to Edward Dubois diverting his water onto my property for over a month causing damage to my basement, garage, and foundation." Am. Compl. Ex. B. Plaintiff was clearly aware at this point that his damages far exceeded that paid by Defendant, and while he asserts that Defendant indicated that it was "going to subrogate against Adirondack Insurance on his behalf for his deductible and the monies they paid him," Am. Compl. ¶ 18, he fails to provide any factual allegations other than the June 5, 2017 telephone call with Ms. Campbell indicating that he was mislead into believing that Liberty was considering paying more than $10,500 for the damages purportedly caused by Mr. Dubois's actions. Indeed, the letter Plaintiff received from Defendant's subrogation attorney in October 2014 indicates that the law firm was retained to assert a claim against Mr. Dubois "for the total amount of $11,500.00 (which includes your $1,000.00 deductible) paid by Liberty Mutual for damages sustained to your premises arising from a loss that occurred on February 21, 2014." Am. Compl., Ex. C. While the letter also indicates that the attorney was aware that Plaintiff had out of pocket expenses in the total amount of $85,000.00, the letter merely asks whether Plaintiff had hired an attorney to recover these expenses. Id. The letter does not indicate that Defendant was considering whether to pay these expenses under some provision of the Policy, and the Amended Complaint does not assert otherwise. While Plaintiff asserts that "prior to June 5, 2017" his former attorney was in contact with Defendant regarding Plaintiff's desire to file a new claim on the damages observed in 2016, Am. Compl. ¶ 21, this conclusory allegation fails to identify whether the conversation occurred within the limitations period and, if it did, if it involved any statement from Defendant that would have lulled Plaintiff in forgoing the filing of a timely action.
Plaintiff fails to present plausible factual allegations supporting his argument that *376 Defendant should be estopped from asserting a suit time limitations defense.
B. Waiver
Plaintiff also argues that Defendant waived the suit time limitations defense by failing to assert it in the disclaimer letters. See Pl. Mem. L., at 11-13. Waiver is the "voluntary and intentional relinquishment of a known right." Albert J. Schiff Assoc., Inc. v. Flack , 51 N.Y.2d 692, 698, 435 N.Y.S.2d 972, 417 N.E.2d 84 (N.Y. 1980). "In order to establish waiver, 'plaintiff must present evidence from which the defendant's intent to relinquish the protection of the contractual limitations period can be reasonably inferred.' " N. Am. Foreign Trading Corp. , 477 F. Supp. 2d at 582 (quoting Enterprise Eng'g , 2004 WL 2997857, at *3 ). "Waiver 'should not be lightly presumed.' " Id. (quoting Gilbert Frank Corp. , 70 N.Y.2d at 968, 525 N.Y.S.2d 793, 520 N.E.2d 512 ). "A plaintiff must show 'a clear manifestation of intent' by a carrier 'to relinquish the protection of the contractual imitations period' before the insurer can be said to have waived or can be estopped from asserting the defense." Plon Realty Corp. , 533 F. Supp. 2d at 395 (quoting Gilbert Frank Corp. , 70 N.Y.2d at 968, 525 N.Y.S.2d 793, 520 N.E.2d 512 ).
Plaintiff's allegations fail to the meet the requirements of waiver. "New York's highest court has also ruled that '[e]vidence of communications or settlement negotiations between an insured and its insurer either before or after expiration of a limitations period contained in a policy is not, without more, sufficient to prove waiver or estoppel' with regard to the timeliness defense." Plon Realty Corp. , 533 F. Supp. 2d at 395 (quoting Gilbert Frank Corp. , 70 N.Y.2d at 968, 525 N.Y.S.2d 793, 520 N.E.2d 512 ). Defendant's June 12, 2017 letter, which Plaintiff identifies as Defendant's first declination letter, is from Ms. Campbell. Am. Compl. Ex. M. In the letter, Ms. Campbell indicates that Liberty has received the engineering reports and additional documentation that plaintiff submitted on June 9, 2017, and indicates that Liberty is of the position that "the correct coverage has been applied in the limit has been paid accordingly." Id. Ms. Campbell contends in this letter that the loss represented in Plaintiff's engineering reports and other documentation "is excluded except for that provided and already paid under the Back Up of Sewer and Sump Pump Overflow Coverage Endorsement." Id. The letter also attaches the Declarations page for the Policy that was in effect at the time of the loss, as well as a copy of the endorsements. Id.
After Plaintiff responded to the June 12, 2017 letter by arguing that Liberty did not clearly identify the facts that Liberty relied upon to trigger any specific exclusion, Defendant issued its June 19, 2017 letter, referred to by Plaintiff as the second declination letter. See Am. Compl. Ex. O. This letter, also authored by Ms. Campbell, goes into greater detail regarding the facts surrounding the alleged loss and the reasons for Liberty's coverage decision. Id. The letter also attaches a document entitled "Important Policy and/or State Specific Information." Id. This directs the recipient to consult the Policy to determine the suit limitation period that applies, and then quotes the "Special Provisions-Section 1-Conditions: 8. Suit Against Us" provision applicable in this matter.
Neither the June 12 nor June 19 letter show a clear manifestation of intent to relinquish the protection of the contractual imitations period, and the inclusion of the suit limitations provision attached to the June 19 letter indicates that Liberty did not intend to waive this defense. Further, even though the June 12 *377 letter did not contain reference to this suit limitations provision, "[a]n insurer has no duty to advise an insured of [a] limitations period." N. Am. Foreign Trading Corp. , 477 F. Supp. 2d at 583 (citing Compis Servs., Inc. v. Hartford Steam Boiler Inspection and Ins. Co. , 272 A.D.2d 886, 708 N.Y.S.2d 770, 772 (N.Y. App. Div. 2000) ). Thus, Defendant was not obligated to call Plaintiff's attention to the Policy suit limitation provision. Blitman Constr. Corp. v. Insurance Co. of N. Am. , 66 N.Y.2d 820, 823, 498 N.Y.S.2d 349, 489 N.E.2d 236 (N.Y. 1985) ; see Schunk v. New York Cent. Mut. Fire Ins. Co. , 237 A.D.2d 913, 914-15, 655 N.Y.S.2d 210 (N.Y. App. Div. 1997).[5] Moreover, "[w]here a carrier omits from its declination letter a ground for denial of a claim, it may still raise it in the ensuing action as long as the carrier did not waive it and the plaintiff sustained no prejudice." Plon Realty Corp. , 533 F. Supp. 2d at 396. Plaintiff fails to establish prejudice because the first disclaimer letter was issued well after the expiration of the suit limitations period.
4. Conclusion, Suit Limitations Period
For the reasons discussed above, Defendant's motion to dismiss the action as barred by the applicable suit limitations period is granted to the extent it alleges a breach of contract claim (Second Cause of Action).[6] Dismissal of this cause of action is without prejudice to Plaintiff bringing a motion to amend the allegations in the Amended Complaint to assert a basis to apply estoppel to the time limitations defense.
A. First Cause of Action - Declaratory Judgment
Plaintiff alleges in the First Cause of Action that he is "entitled to a judicial declaration from this Court that: (a) Defendant is obligated to perform its contractual obligations under the Policy, and (b) that Plaintiff is entitled to coverage for the full amount of his Loss." Am. Compl. ¶ 59. "It is within the broad discretion of the trial court whether to exercise declaratory jurisdiction." Camofi Master LDC v. Coll. P'ship, Inc. , 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006) (citing Muller v. Olin Mathieson Chem. Corp. , 404 F.2d 501, 505 (2d Cir. 1968) ). "The court must consider whether a declaratory judgment will (1) 'serve a useful purpose in clarifying and settling the legal relations in issue;' or (2) 'afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " Id. (quoting *378 Cont'l Cas. Co. v. Coastal Sav. Bank , 977 F.2d 734, 737 (2d Cir. 1992) (citation omitted)). The declaratory judgment Plaintiff seeks is duplicative of the adjudication of its breach of contract claim. Inasmuch as the breach of contract claim is dismissed as barred by the applicable time limitations provision, the declaratory judgment cause of action serves neither of the two objectives identified in Cont'l Cas. Co . Accordingly, the First Cause of Action is dismissed without prejudice.
B. Third Cause of Action - Duty of Good Faith and Fair Dealing
The Third Cause of Action alleges that Defendant breached the covenant of good faith and fair dealing implied in the homeowners insurance contract. See Fleisher v. Phoenix Life Ins. Co. , 858 F. Supp. 2d 290, 298 (S.D.N.Y. 2012) ("Under New York law, there is a covenant of good faith and fair dealing implied in all contracts."). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Id. at 298-99 (quoting Harris v. Provident Life & Accident Ins. Co. , 310 F.3d 73, 80 (2d Cir. 2002) ). Defendant argues that the cause of action should be dismissed as duplicative of the breach of contract claim.
"A claim premised on a breach of the implied covenant should be dismissed as duplicative if it is based upon the same facts underpinning an express breach of contract claim." Core Sec. SDI Corp. v. Albany Med. Ctr. , No. 1:18-CV-167 (GLS/CFH), 2019 WL 1228550, at *1 (N.D.N.Y. Mar. 15, 2019) (citing Research Found. of State Univ. of N.Y. v. Nektar Therapeutics , No. 1:9-cv-1292, 2013 WL 2145652, at *8 (N.D.N.Y. May 15, 2013) ); see also Sanderson v. First Liberty Ins. Corp. , No. 8:16-CV-644, 2017 WL 5176371, at *3 (N.D.N.Y. Nov. 7, 2017), appeal dismissed , No. 17-3892, 2018 WL 6428070 (2d Cir. Apr. 24, 2018) ("[A] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract.")(internal quotation marks and citation omitted). However,
"breach of the implied covenant [of good faith and fair dealing] is not a separate claim from breach of contract, it is an alternative means by which a contract may be breached." Thompson v. Advanced Armament Corp. , 614 F. App'x 523, 525 (2d Cir. 2015) (citing Harris v. Provident Life & Accident Ins. Co. , 310 F.3d 73, 80 (2d Cir. 2002) ). It is possible for a party to not breach any express contractual provisions, yet breach the contract by breaching the implied covenant. See Wiseman v. ING Groep, N.V. , 16-cv-7587, 2017 WL 4712417, at *8 (S.D.N.Y. Sept. 28, 2017).
Core Sec. SDI Corp. , 2019 WL 1228550, at *1. Where the breach of the implied covenant of good faith and fair dealing claim rests on a different set of supporting facts from the express breach of contract claim, it should be allowed it to survive at the Rule 12(b)(6) stage. See id. ("At this stage, Core's breach of the implied covenant of good faith and fair dealing claim ... is distinct enough from Core's express breach of contract claim to allow it to survive."); see also D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh , 168 A.D.3d 505, 507, 92 N.Y.S.3d 231, 234 (N.Y. App. Div. 2019) ("As noted by the Court of Appeals in [ Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y. , 10 N.Y.3d 187, 856 N.Y.S.2d 505, 886 N.E.2d 127 (N.Y. 2008) ], a claim for breach of contract and one for bad faith handling of an insurance claim are not necessarily duplicative.
*379 The first and second causes of action plead different conduct by defendant and, in any event, defendant did not cross-appeal with respect to Supreme Court's denial of its motion to dismiss the bad faith claim on the basis of duplication.")(citing Bi-Economy Mkt., Inc. , 10 N.Y. 3d at 191, 856 N.Y.S.2d 505, 886 N.E.2d 127 ).
Plaintiff contends that while "[t]he breach of contract cause of action has 4 paragraphs and adds little to the preliminary allegations," Pl. Mem. L., at 16, the Third Cause of Action includes allegations of conduct different than underlie the breach of contract claim, and seeks damages in addition to those allowed on a breach of contract action. See Am. Compl. ¶¶ 63-68. In this regard, Plaintiff alleges:
Defendant acted in bad faith by: (A) unreasonably, maliciously, recklessly, or intentionally denying its obligations to pay benefits to Plaintiff when it knew or should have known it had an obligation to provide insurance coverage; (B) failing and refusing to pay the Loss without a reasonable basis and with the knowledge or reckless disregard of its lack of reasonable basis; (C) unreasonably, maliciously, recklessly, or intentionally delaying payment of the insurance proceeds due and owed Plaintiff under the Policy; (D) failing to conduct a fair, complete and proper investigation of Plaintiff's claim before denying coverage; (E) breaching its promise of security to Plaintiff by unreasonably and without justification reneging on the homeowners insurance benefits it promised to provide Plaintiff, leaving Plaintiff without sufficient resources to repair his damaged Home; and (F) otherwise acting intentionally, maliciously, unreasonably, or recklessly in denying the Plaintiffs the benefits owed under the Policy.
Id. ¶ 64. Plaintiff seeks an award of compensatory damages, consequential damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs. Id. ¶ 68.
Because the breach of the implied covenant of good faith and fair dealing claim pleads conduct by Defendant different than alleged in the breach of contract claim, and because Plaintiff may be entitled to different relief than allowed under a breach of contract claim, see D.K. Prop., Inc. , 168 A.D.3d at 506-07, 92 N.Y.S.3d 231 ;[7] Great Am. Ins. Co. of New York v. Castleton Commodities Int'l LLC , 2016 WL 828127, at *8 (S.D.N.Y. Feb. 25, 2016) ("[C]onsequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context.")(citing Panasia Estates, Inc. v. Hudson Ins. Co. , 10 N.Y.3d 200, 203, 856 N.Y.S.2d 513, 886 N.E.2d 135 (N.Y. 2008) ), the claim is not duplicative of the breach of contract claim. Thus, on this basis, the claim will be allowed to proceed.
C. Fourth Cause of Action - Violation of N.Y. General Business Law § 349
Defendant argues that Plaintiff's Fourth Cause of Action, asserting a claim *380 pursuant to New York General Business Law § 349 (" GBL § 349"), must be dismissed because this is a private contract dispute and not a "consumer-oriented" transaction. Def. Mem. L. at 14-15. GBL § 349 makes it unlawful to engage in any "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." An aggrieved party may bring a private action for a violation of this statute. See N.Y. Gen. Business L. § 349 (h); Stutman v. Chemical Bank , 95 N.Y.2d 24, 28-29, 709 N.Y.S.2d 892, 731 N.E.2d 608 (N.Y. 2000). However, to sustain a GBL § 349 claim, a plaintiff must demonstrate harms caused by deceptive practices directed at consumers as a whole or the public at large. Gaidon v. Guardian Life Ins. Co. of Am. , 94 N.Y.2d 330, 343, 704 N.Y.S.2d 177, 725 N.E.2d 598 (N.Y. 1999) ; Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A. , 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 (N.Y. 1995) ; Cohen v. JP Morgan Chase & Co. , 498 F.3d 111, 126 (2d Cir. 2007) ; McLean-Laprade v. HSBC , No. 7:12-CV-1774 (LEK/ATB), 2013 WL 3930565 at *6 (N.D.N.Y. July 30, 2013). "Private contract disputes, unique to the parties," do not "fall within the ambit of the statute." Oswego Laborers' Local 214 Pension Fund , 85 N.Y. 2d at 25, 623 N.Y.S.2d 529, 647 N.E.2d 741 ; see MaGee v. Paul Revere Life Ins. Co. , 954 F. Supp. 582, 586 (E.D.N.Y. 1997) ("[T]he injury must be to the public generally as distinguished from the plaintiff alone.").
Plaintiff counters Defendant's argument for dismissal by pointing to the allegations in the Amended Complaint that he is "an individual consumer," Am. Compl. ¶ 75; that the Policy "is a consumer-oriented standard form product that is designed and intended by Defendant to be purchased by the public at large in the State of New York," id. ¶ 76; that the forms making up the Policy "are consumer-oriented in that they are offered and are available to consumers at large, and are regularly used by Defendant in the inducement of individual consumers in the market for homeowners' insurance coverage," id. ¶ 77; and that "Defendant's practices, as described [in the Amended Complaint], harm the public at large in a material way by misleading the public at large." Id. ¶ 80. Although Plaintiff's allegations appear to be little more than a formulaic recitation of the elements of the cause of action, they nudge Plaintiff's GBL § 349 claim "across the line from conceivable to plausible." Twombly , 550 U.S. at 570, 127 S.Ct. 1955. Plaintiff's allegations, accepted as true, plausibly indicate that Defendant entered into contractual relationships with customers nationwide and engaged in practices similar to that alleged here, thereby harming the public. This "satisfies the requirement of 'consumer-oriented' conduct within the meaning of Section 349." Nick's Garage, Inc. v. Nationwide Mut. Ins. Co. , 101 F. Supp. 3d 185, 197 (N.D.N.Y. 2015), affd. in part, vacated in part, remanded 715 Fed.Appx. 31 (2d Cir. 2017) ; see Acquista v. New York Life Ins. Co. , 285 A.D.2d 73, 82, 730 N.Y.S.2d 272 (N.Y. App. Div. 2001). At this pre-discovery phase stage of the litigation, the claim will be allowed to proceed to see if Plaintiff can establish that the same alleged practice that he was subjected to has been aimed at other policyholders besides himself so as to have a broader impact on consumers at large. Acquista , 285 A.D.2d at 82, 730 N.Y.S.2d 272.
D. Available Damages
Defendant argues that Plaintiff is not entitled to consequential damages, attorneys'
*381 fees, or punitive damages.[8] As indicated above, Plaintiff may be entitled to consequential damages if he prevails on his breach of the covenant of good faith and fair dealing claim. See D.K. Prop., Inc. , 168 A.D.3d at 506-07, 92 N.Y.S.3d 231 ; Great Am. Ins. Co. of New York, 2016 WL 828127, at *8. Under certain circumstances, attorneys' fees may be a component of consequential damages. See Whiteface Real Estate Dev. & Const., LLC v. Selective Ins. Co. of Am. , No. 8:08-CV-24 (GLS/DRH), 2010 WL 2521794, at *5 (N.D.N.Y. June 16, 2010) ("[A] reasonable fact finder could conclude that the consequential damages sought by Whiteface [which includes attorneys' fees] were reasonably contemplated by the parties and are necessary to return Whiteface to where it would have been had coverage been provided."). Furthermore, GBL § 349(h) provides that in a private right of action brought pursuant to the statute for injunctive relief or damages, "[t]he court may award reasonable attorney's fees to a prevailing plaintiff." Thus, Defendants' motion to strike Plaintiff's demand for consequential damages and attorneys' fees is denied.
As to punitive damages, Plaintiff contends that the allegations in the Amended Complaint "amount to fraud, which is an independent tort that supports such a claim. Fraud or any independent tort supports a claim for punitive damages against an insurer...." Pl. Mem. L. at 22-23. However, the Amended Complaint does not specifically allege a claim for fraud or other independent tort. In New York, "[t]here is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance contract." Zawahir v. Berkshire Life Ins. Co. , 22 A.D.3d 841, 842, 804 N.Y.S.2d 405 (N.Y. App. Div. 2005) (citing Continental Cas. Co. v. Nationwide Indemn. Co. , 16 A.D.3d 353, 354-355, 792 N.Y.S.2d 434 (N.Y. App. Div. 2005) ). Plaintiff's use of "familiar tort language" to support his Third Cause of Action (such as his allegation that Defendant acted "unreasonably, maliciously, recklessly, or intentionally" in denying its obligations to pay benefits to Plaintiff) is insufficient to create an independent tort claim. See Clark-Fitzpatrick, Inc. v. Long Island R. Co. , 70 N.Y.2d 382, 390, 521 N.Y.S.2d 653, 516 N.E.2d 190 (N.Y. 1987) ("employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim"); Cross v. State Farm Ins. Co. , 10 CV 1179, 2011 WL 4916534, at *5 (N.D.N.Y. Oct. 17, 2011) (In New York "[t]here is no separate cause of action in tort for an insurer's bad faith failure to perform its obligations under an insurance contract."); see also Vitrano v. State Farm Ins. Co. , No. 08 CV 103, 2008 WL 2696156, at *3-4 (S.D.N.Y. July 8, 2008) ("New York law does not recognize an independent cause of action for bad faith denial of insurance coverage."); Wiener v. Unumprovident Corp. , 202 F. Supp. 2d 116, 123 (S.D.N.Y. 2002) (holding that New York does not recognize an independent tort action for bad faith denial of insurance coverage); Zawahir v. Berkshire Life Ins. Co. , 22 A.D.3d 841, 842, 804 N.Y.S.2d 405 (N.Y. App. Div. 2005) (same).
Because Plaintiff has not alleged an independent claim for fraud (which requires special pleading under Fed. R. Civ. P. 9(b) ), or any other independent tort, he *382 may not maintain a claim for punitive damages. See New York University v. Continental Ins. Co. , 87 N.Y.2d 308, 319-20, 639 N.Y.S.2d 283, 662 N.E.2d 763 (N.Y. 1995) ; Reads Co., LLC v. Katz , 72 A.D.3d 1054, 1056-1057, 900 N.Y.S.2d 131 (N.Y. App. Div. 2010) ; Ticheli v. Travelers Ins. Co. , No. 1:14-CV-00172, 2014 WL 12587066, at *4 (N.D.N.Y. Dec. 23, 2014). Accordingly, the claim for punitive damages is dismissed without prejudice.
V. CONCLUSION
For the reasons dismissed above, Defendant's motion to dismiss [Dkt. No. 13] is GRANTED in part and DENIED in part . The motion is granted in that the First Cause of Action, the Second Cause of Action, and the claim for punitive damages are DISMISSED without prejudice . The motion is denied in all other respects.
IT IS SO ORDERED.

For the purposes of this motion, the amended complaint's factual allegations are assumed to be true. See Fahs Constr. Group, Inc. v. Gray , 2011 WL 294269, at *1, 2011 U.S. Dist. LEXIS 7822, at *5-6 (N.D.N.Y. Jan. 27, 2011).

There is no dispute that the matter is to be resolved under substantive New York Law, nor could there be inasmuch as the Policy was issued to a New York insured, insuring property located in New York. See Ethicon v. Aetna Casualty & Surety Co. , 688 F. Supp. 119, 123 (S.D.N.Y. 1988) ; see also Funk v. Allstate Ins. Co. , 2013 WL 6537031, at *4, n.2 (E.D.N.Y. Dec. 13, 2013) ("Since, inter alia , all Plaintiffs and their property are located in New York and all the damages were suffered in New York, New York clearly has the greater interest in regulating the conduct in question. Accordingly, New York law applies ..."). The parties' implied consent to applying New York law "is sufficient to establish choice of law." Santalucia v. Sebright Transp., Inc. , 232 F.3d 293, 296 (2d Cir. 2000).

"[C]ontract terms are ambiguous if they are 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.' " Olin Corp., 704 F.3d at 99 (quoting Nowak v. Ironworkers Local 6 Pension Fund , 81 F.3d 1182, 1192 (2d Cir. 1996) ).

The policy in Classic Laundry & Linen provided that "[n]o one may bring a legal action ... unless ... [t]he action is brought within 2 years after the date on which the direct physical loss or damage occurs."

("Further, there is no question that plaintiffs received an updated copy of the policy containing the two-year limitations provision when the policy was renewed on September 7, 1991, prior to the fire. The fact that plaintiffs may not have read the limitations provision is of no moment; New York Central was not obligated to call plaintiffs' attention to it (see , Blitman Constr. Corp. v. Insurance Co. of N. Am., supra , at 823, 498 N.Y.S.2d 349, 489 N.E.2d 236 ; see also , Maurice v. Allstate Ins. Co. , 173 A.D.2d 793, 570 N.Y.S.2d 654 ). The further contention of plaintiffs that the conduct of New York Central estops it from asserting the contractual limitations period is without merit. There is no evidence in the record to support an estoppel (see , Warhoftig v. Allstate Ins. Co. , 199 A.D.2d 258, 604 N.Y.S.2d 245 ). Finally, the failure of New York Central to comply with 11 NYCRR 216.6(c), which requires notice of a policy provision limiting the right to sue, in rejecting plaintiffs' contents claim, "without more, is not sufficient to estop [it] from relying upon the limitations period in the policy" (May v. Aetna Life & Cas. Co. , 204 A.D.2d 1007, 614 N.Y.S.2d 955 )").

Neither party has addressed whether the suit limitations period in the Policy applies to all remaining causes of action. In an exercise of caution, the Court will presume without deciding that it does not, reserving to the parties the right to address this issue in a subsequent motion.

("A plaintiff may sue for consequential damages resulting from an insurer's failure to provide coverage if such damages ("risks") were foreseen or should have been foreseen when the contract was made. Although proof of such consequential damages will ultimately rest on what liability the insurer is found to have "assumed consciously," or from the plaintiff's point of view, have warranted the plaintiff to reasonably suppose the insurer assumed when the insurance contract was made, a determination of whether such damages were, in fact, foreseeable should not be decided on a motion to dismiss and must await a fully developed record.")(citing Bi-Economy Mkt. , 10 N.Y.3d at 192, 856 N.Y.S.2d 505, 886 N.E.2d 127 )

Defendant also references treble damages, but provides no argument addressed to these damages. The Court notes that GBL § 349(h) provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section."